RICARDO GUZMAN vs. MRM/ELGIN[1] & others;[2] WILLCOX
& GIBBS, INC., third-party defendant.

Suffolk. January 7, 1991. - March 14, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Negligence*, Manufacturer. *Corporation*, Corporate successor liability. *Sale*, Warranty. *Uniform Commercial Code*, Warranty. *Warranty*.

This court declined to adopt, as an exception to the general rule of nonliability for a corporate successor, the so-called "product line" theory of liability under which a party that acquires a manufacturing business and continues the output of its line of products assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired. [566-571]

CERTIFICATION of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Michael B. Bogdanow* (*Leo V. Boyle* with him) for the plaintiff.

*Edward J. O'Brien* for MRM/Elgin.

*Richard G. Whalen*, for Willcox & Gibbs, Inc., submitted a brief.

LYNCH, J. The following questions have been certified to this court by the United States District Court for the District of Massachusetts, pursuant to Supreme Judicial Court Rule 1:03, as appearing in 382 Mass. 700 (1981):

(1) Does the Commonwealth of Massachusetts recognize the product line theory of liability as an exception

---

[1]A wholly owned subsidiary of Cozzoli Machine Co.

[2]Nordson Corporation and Willcox & Gibbs, Inc.

to the general rule of nonliability for a corporate successor? More specifically, based upon the Stipulation and Statement of Agreed Facts and the documents upon which the Stipulation and Statement of Agreed Facts was based, may the defendant, MRM/ELGIN, A Wholly Owned Subsidiary of Cozzoli Machine Co., be held liable to the plaintiff for the alleged negligence or breach of warranty of M.R.M. Company, Inc.?

(2) Should the product line theory of successor liability be recognized in Massachusetts, must the original manufacturer of the product in question no longer exist in order for the successor corporation to be liable?

Because we answer the first question in the negative for the reasons that follow, we need not address the second question.

The plaintiff, Guzman, commenced this action in the Federal court in 1986 against Willcox & Gibbs, Inc.; Nordson Corporation; and MRM/Elgin Corp. (MRM/Elgin), a wholly owned subsidiary of Cozzoli Machine Co. MRM/Elgin asserted third-party claims for contribution and indemnity against Willcox & Gibbs, Inc., and moved for summary judgment on the grounds that it is not a successor corporation liable for claims based on negligence and breach of warranty for a product manufactured and sold by a predecessor corporation.

We set out the facts stipulated by the parties. In June, 1983, the plaintiff, Guzman, suffered severe injury to his thumb while operating an automatic bottle-filling machine at Lincoln Foods in Lawrence. The machine had been manufactured and sold to Lincoln Foods in 1965 by M.R.M. Co., a corporation incorporated in the State of New York and with its usual place of business in Plainview, New York.

In 1969, Willcox & Gibbs, Inc., purchased all of the stock of M.R.M. Co. Thereafter, M.R.M. Co. continued to manufacture automatic bottle-filling machines substantially identical to the machine which injured the plaintiff. M.R.M. Co.'s original owners continued to operate the plant and its officers before the sale remained the officers of M.R.M. Co.

In 1971, Domain Industries, Inc. (Domain), purchased substantially all of M.R.M. Co.'s assets from M.R.M. Co. There is a dispute as to whether the asset purchase agreement required Domain to indemnify Willcox & Gibbs for claims such as the present one. Domain thereafter continued to manufacture and sell automatic bottle-filling machines with the same basic design through M.R.M. Co., a division of Domain. After the sale of most of its assets and its name to Domain, M.R.M. Co. changed its name to W&G Properties and no longer manufactured or sold such machines. In 1972, W&G Properties was merged into Willcox & Gibbs, Inc.

In 1972, Domain moved the manufacturing operation at issue from New York to Wisconsin, and combined it with another of its divisions to create a new division called MRM/Elgin Packaging Machinery Division. Five of the original M.R.M. Co. employees were hired to work in this new division.[3] The division continued to manufacture machines of the same basic design.

In 1978, ND Corp. (a subsidiary of Nor-Dom Corp., itself a subsidiary of Nordson Corp.) merged into Domain Industries, Inc. In March 1979, Domain Industries, Inc., merged into Nor-Dom Corp., and Nor-Dom Corp., after changing its name to Domain Industries, Inc., merged into Nordson Corporation. Domain became a division of Nordson and MRM/Elgin Packaging Machinery Division remained a division of Domain, and continued to manufacture and sell machines similar to the machine which caused the plaintiff's injuries. In July, another corporation acquired all of the intermediate division except MRM/Elgin Packaging Machinery Division.

In 1983 (after the accident), Cozzoli Machine Co. acquired, for cash, the assets of MRM/Elgin Packaging Machinery Division, and incorporated it as a wholly owned subsidiary under the name MRM/Elgin Corp. MRM/Elgin

---

[3]The former owner was hired as a consultant; the other four were hired as sales manager, customer service representative, accountant, and assembly foreman.

continues to manufacture and sell the product line which includes machines of the same basic design.

The asset purchase agreement between Cozzoli and Nordson provided, "It is . . . agreed Cozzoli shall not assume or otherwise be responsible for . . . (a) Any losses, damages, claims, injuries or causes of action arising from incidents occurring before the Closing Date [of September 30, 1983]." The agreement also provided that Cozzoli would indemnify Nordson for "any products liability claims or suits . . . arising out of accidents, incidents or otherwise involving the Product Line occurring on or after the Closing Date."

Most jurisdictions, including Massachusetts, follow the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets, unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. See *Dayton* v. *Peck, Stow, & Wilcox Co.*, 739 F.2d 690, 692 (1st Cir. 1984) (construing Massachusetts law); *Leannais* v. *Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977); 15 W. Fletcher, Law of Private Corporations §§ 7122, 7123 (perm. ed. 1990).

The Supreme Court of California in *Ray* v. *Alad*, 19 Cal. 3d 22 (1977), introduced an exception to the general rule of a successor corporation's nonliability, applicable to products liability cases. Under the "product line" theory,

> "[A] party which acquires a manufacturing business and continues the output of its line of products . . . assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired."

*Id.* at 34. Courts in three other States have adopted this theory of recovery. See *Martin* v. *Abbott Laboratories, Inc.*, 102 Wash. 2d 581, 612 (1984); *Dawejko* v. *Jorgensen Steel Co.*,

290 Pa. Super. 15, 23 (1981); *Ramirez* v. *Amsted Indus., Inc.*, 86 N.J. 332, 348 (1981).

The majority of State courts that have addressed the product line theory have declined to adopt it. See, e.g., *Bernard* v. *Kee Mfg. Co.*, 409 So. 2d 1047, 1050 (Fla. 1982); *Domine* v. *Fulton Iron Works*, 76 Ill. App. 3d 253, 257 (1979); *DeLapp* v. *Xtraman, Inc.*, 417 N.W.2d 219, 222 (Iowa 1987); *Pelc* v. *Bendix Mach. Tool Corp.*, 111 Mich. App. 343, 356 (1981); *Niccum* v. *Hydra Tool Corp.*, 438 N.W.2d 96, 100 (Minn. 1989); *Young* v. *Fulton Iron Works Co.*, 709 S.W.2d 927, 940 (Mo. Ct. App. 1986); *Jones* v. *Johnson Mach. & Press Co.*, 211 Neb. 724, 730 (1982); *Downtowner, Inc.* v. *Acrometal Prods., Inc.*, 347 N.W.2d 118, 123 (N.D. 1984); *Simoneau* v. *South Bend Lathe, Inc.*, 130 N.H. 466, 469 (1988); *Flaugher* v. *Cone Automatic Mach. Co.*, 30 Ohio St. 3d 60, 66 (1987); *Hamaker* v. *Kenwel-Jackson Mach., Inc.*, 387 N.W.2d 515, 521 (S.D. 1986); *Griggs* v. *Capitol Mach. Works, Inc.*, 690 S.W.2d 287, 293 (Tex. Ct. App. 1985); *Ostrowski* v. *Hydra Tool Corp.*, 144 Vt. 305, 308 (1984); *Fish* v. *Amsted Indus., Inc.*, 126 Wis. 2d 293, 309-310 (1985). We also decline to adopt the product line theory of recovery, for the reasons discussed below.

The rationale asserted as justifying liability under that theory is threefold:

> "(1) [T]he virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for [its predecessor's] defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business."

*Ray, supra* at 31. See also *Ramirez, supra* at 349-353.

With respect to the first reason, the premise is faulty unless the theory is limited to those cases where the predecessor

operation no longer exists. Even then, it is not the purchase by the successor corporation that deprived the plaintiff of a remedy, but rather the demise of the predecessor. Furthermore, the plaintiff's lack of a remedy against the original manufacturers is not a justification for imposing liability on another absent fault and causation. See *Downtowner, Inc.* v. *Acrometal Prods., Inc., supra* at 123; *Manh Hung Nguyen* v. *Johnson Mach. & Press Co.,* 104 Ill. App. 3d 1141, 1149 (1982); *Fish* v. *Amsted Indus., Inc., supra* at 305-306.

The second justification for the product line theory is that it promotes what is said to be the primary policy underlying the rule of strict liability, "the protection of otherwise defenseless victims of manufacturing defects and the *spreading throughout society* of the cost of compensating them" (emphasis in original). *Ray, supra* at 31. See *Ramirez, supra* at 350. This argument overly simplifies the underlying principles of strict liability. "Strict liability is not a no-fault system of compensation." *Simoneau* v. *South Bend Lathe, Inc., supra* at 469. Rather, its goal is to "place responsibility for a defective product on the manufacturer who placed that product into commerce." *Bernard* v. *Kee Mfg. Co., supra* at 1050. As formulated in the Restatement (Second) of Torts § 402A (1965), strict liability is limited to "[o]ne who sells" the defective product. Its justification "has been said to be that the seller, by marketing his product for use and consumption, has undertaken . . . a special responsibility toward any member of the consuming public who may be injured by it." *Correia* v. *Firestone Tire & Rubber Co.,* 388 Mass. 342, 354 (1983). To impose liability on a successor corporation which did not manufacture, sell, or market the product would be contrary to this principle. See, *Simoneau, supra,* ("proof of a manufacturer's responsibility remains an essential element of a plaintiff's strict liability claim"); *Downtowner, supra* at 123 (product line theory would impose liability without duty, thereby removing strict liability from the realm of tort); *Hamaker* v. *Kenwel-Jackson Mach., Inc., supra* at 521 ("§ 402A is designed to . . . insure that damages resulting from defective products are borne by those

who market the product"); *Ostrowski* v. *Hydra Tool Corp.,* *supra* at 308 ("the successor corporation did not create the risk"); *Domine* v. *Fulton Iron Works, supra* at 257 ("The cornerstone of strict liability rests upon the defendant's active participation in placing the allegedly defective product into commerce").

The product line theory is equally inconsistent with the principles of products liability arising under Massachusetts warranty law. In Massachusetts, "there is no 'strict liability in tort' apart from liability for breach of warranty under the Uniform Commercial Code, G. L. c. 106, §§ 2-314 — 2-318." *Swartz* v. *General Motors Corp.,* 375 Mass. 628, 629 (1978). See *Mason* v. *General Motors Corp.,* 397 Mass. 183, 191 (1986). We have noted, however, that the Massachusetts law of warranty is congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965). *Back* v. *Wickes Corp.,* 375 Mass. 633, 640 (1978). Like strict liability under § 402A of the Restatement, liability for breach of warranty is limited to the "manufacturer, seller, lessor, or supplier of goods." G. L. c. 106, § 2-318. Therefore, there is no more basis in Massachusetts warranty law than in the principles of strict liability for adopting the product line theory.

The third justification offered for the product line theory is that a successor who has benefited from the good will earned by a predecessor's product line should also bear the costs of injuries from the product which would ordinarily be borne by the predecessor. *Ramirez, supra* at 352.[4] "This argument fails to recognize that the successor paid for the predecessor's goodwill at the asset purchase." *Fish* v. *Amsted Indus., Inc., supra* at 309 (1985).

Another reason courts have rejected the product line theory is "the very real threat" to small businesses of economic annihilation under such a rule of expanded liability. See *Ber-*

---

[4]The unstated assumption that goodwill exists, was transferred, and made use of by the successor, will not be contested here, although these assumptions may not apply in a wide variety of transactions.

*nard, supra* at 1049; *Ostrowski, supra* at 308. The theory
assumes that successor corporations can estimate the risks of
claims for injuries from previously manufactured, defective
products, and spread the costs of those injuries by obtaining
liability insurance coverage or charging higher prices to con-
sumers. *Ray, supra* at 31; *Ramirez, supra* at 354. One court
challenged this assumption as follows:

> "Recent studies indicate that many manufacturers, and
> in particular small manufacturers, have a difficult prob-
> lem obtaining products liability insurance and find it
> impossible to cover the risks by raising prices because
> they have to compete with larger manufacturers who
> can keep the price down. [Citations omitted.] Addition-
> ally, it is one thing to assume that a manufacturer can
> acquire insurance against potential liability for its own
> products and another to assume it can acquire such in-
> surance for the products made by a different manufac-
> turer. We do not know whether insurance companies
> will readily provide such insurance. We cannot assume
> it as fact."

*Manh Hung Nguyen* v. *Johnson Mach. & Press, supra* at
1150. See *Downtowner, supra* at 124.

Proponents of the theory also assume that the sale price of
assets can be reduced "by an amount calculated to compen-
sate the successor corporation for the potential liability it has
assumed," *Ramirez, supra* at 354. Courts and commentators,
however, have raised the concern that the threat of potential
liability would inhibit the free alienability of corporate as-
sets, forcing some small businesses to liquidate rather than
transferring their assets, to the detriment of the economy in
general. See *Bernard, supra* at 1049-1050; *Ostrowski, supra*
at 308; *Flaugher* v. *Cone Automatic Mach. Co., supra* at 66.

These are issues of broad public policy involving balancing
the interests of future plaintiffs and defendants, which the
Legislature is better equipped to resolve. *Correia* v. *Firestone
Tire and Rubber Co.,* 388 Mass. 342, 356 (1983). See, e.g.,

*Downtowner, supra* at 124; *Leannais, supra* at 441. We have held that "[w]hether liability for products that are defective without fault should be imposed in this Commonwealth, and, if so, what types of transactions would give rise to liability, are matters of social policy to which the Legislature has given its attention." *Mason* v. *General Motors Corp., supra* at 191. Accordingly, we have, in the past, deferred to the Legislature's judgment in those matters, *id.*, and we do so in this case as well.

For the foregoing reasons, our answer to the first certified question is "No," and we decline to answer the second.