Kern, J.
Plaintiff, Barry Cowen (“Cowen”), moves for summary judgment seeking that the court declare that defendant Harvard Apparatus, Inc. (“New Harvard”) is a successor corporation and therefore potentially liable to him for certain obligations of the predecessor corporation. Defendants, Harvard Clinical Technologies, Inc. (“Harvard Clinical”), New Harvard, Paul Grindle (“Grindle”), and Diane Gargano-Green (“Gargano-Green”) (collectively, the “defendants”) oppose the motion. Additionally, New Harvard has filed a cross-motion to dismiss all claims brought against it. For the reasons set forth below, Cowen’s motion is DENIED and New Harvard’s motion is ALLOWED. It is further DECLARED that New Harvard is not a successor corporation and is not liable for any judgment that Cowen might obtain against Harvard Clinical.
*224 BACKGROUND
From August 1988 until March 15, 1996, Cowen was employed by a corporation named Harvard Apparatus, Inc. (“Old Harvard”). Prior to March 1996, defendant Grindle owned 100% of Old .Harvard, which, at that time, consisted of two divisions: (1) the Medical Assets Division, and (2) the Bioscience Division.
On March 15, 1996, HAI Acquisition Corporation (“HAI”) purchased the assets from the Bioscience Division of Old Harvard. After this purchase, HAI changed its name to Harvard Apparatus, Inc. (“New Harvard”). The sale of the Bioscience Division was governed by an Asset Purchase Agreement that specifically provided that:
[elxcept for the Contract Liabilities (as defined below), Buyer shall not assume or be bound by any obligations or liabilities of Seller or any affiliate of Seller of any kind or nature, known, unknown, accrued, absolute, contingent or otherwise, whether now existing or hereafter arising whatsoever. Seller shall be responsible for and pay any and all losses, damages, obligations, liens, assessments, judgments, fines, disposal and other costs and expenses, liabilities and claims, . . .
Excluded from the aforementioned sale and acquisition were the medical assets of Old Harvard. On March 22, 1996, as mandated by the terms of the sale, Old Harvard, which still operated the Medical Assets Division of the corporation, changed its name to Walsh, Inc. On April 1, 1996, Walsh, Inc. was renamed Walsh & Bailey, Inc. Thereafter, Grindle removed the Medical Assets Division from Walsh & Bailey and placed it into a new corporation named Harvard Medical. At that time, Grindle retained 85% ownership and Gargano-Green obtained 15% ownership of Harvard Medical. In 1997, in response to Harvard University’s objection to the name Harvard Medical, the name was changed to Harvard Clinical Technology, Inc.
Following the sale of the Bioscience Division, Cowen, who previously had an employment contract with Old Harvard, began working for Harvard Clinical. Cowen was never employed by New Harvard.
DISCUSSION
Summary judgment shall be issued when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17(1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege facts which would establish the existence of a genuine issue of material fact in order to defeat the motion.” Pederson, supra at 17. “The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
At issue in this case is whether New Harvard is a successor corporation to Old Harvard and therefore potentially liable to Cowen for certain of Old Harvard’s obligations. “It is a settled rule of corporate law that, when one company purchases the assets of another, the purchaser does not thereby acquire the debts and liabilities of the seller.” McCarthy v. Litton Industries, Inc., 410 Mass. 15, 21 (1991), citing Guzman v. MRM/Elgin, 409 Mass. 563 (1991) (further citations omitted). Under Massachusetts law, the liabilities of the selling predecessor corporation are not imposed on the successor corporation which purchases its assets unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997). In support of his argument, Cowen asserts that New Harvard expressly or impliedly assumed the liability of Old Harvard and that the transaction constituted a de facto merger or consolidation. For the following reasons, this Court is unpersuaded by both of Cowen’s arguments.
According to the Asset Purchase Agreement, §1.2 (in relevant part):
Except for the Contract Liabilities (as defined below), Buyer shall not assume or be bound by any obligations or liabilities of Seller or any affiliate of Seller of any kind or nature, known, unknown, accrued, absolute, contingent or otherwise, whether now existing or hereafter arising whatsoever. Seller shall be responsible for and pay any and all losses, damages, obligations, liens, assessments, judgments, fines, disposal and other costs and expenses, liabilities and claims, including. . .
Pursuant to the agreement governing the sale of assets, the seller and buyer expressly agreed that the buyer would not be bound by any obligation or liabilities of the seller. Thus, Cowen’s argument that New Harvard expressly or impliedly assumed the liability of Old Harvard is entirely without merit.
Cowen also argues that a de facto merger occurred, thereby imposing liability upon New Harvard. In Mas *225 sachusetts, the factors that courts generally consider in determining whether to characterize an asset sale as a de facto merger are:
whether (1) there is a continuation of the enterprise of the seller corporation so that there is a continuity of management, personnel, physical location, assets and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholder of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.
Cargill, supra at 359-60, citing In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution, 712 F.Sup. 1010, 1015 (D.Mass. 1989) (further citations omitted).
As to the first factor, New Harvard did not purchase “substantially all” of Old Harvard’s assets. The Medical Asset Division that was retained by Old Harvard included a loan receivable in the amount of $4,500,000.00, revenues of approximately $500,000 per year, substantial intellectual property assets, the name “Harvard Medical, Inc.,” and the rights to a patent application that had been filed with the United States Patent Office relating to a new medical product that for a number of years had been under development by Old Harvard.[2] Moreover, although for a short time after the sale, New Harvard shared a building with Old Harvard, New Harvard and Old Harvard employed separate management and personnel.[3] Accordingly, there was no continuity of management or personnel.
As to the second factor, when the sale was initially consummated, Grindle received 27.7% of the equity in New Harvard. However, shortly thereafter, he sold back this equity and therefore does not presently own any interest in New Harvard.
Third, there is no dispute that Old Harvard did not cease operations after the sale of its Bioscience Division. Although the Medical Assets Division which was retained by Old Harvard underwent numerous name changes, the predecessor corporation did not cease operations or liquidate its assets as required in order for the transaction to constitute a de facto merger. And finally, as previously explained, New Harvard did not assume the obligations of Old Harvard necessary for the uninterrupted continuation of business operations of Old Harvard. To the contrary, § 1.2 of the Asset Purchase agreement states that New Harvard shall not be bound by any obligation or liabilities of Old Harvard.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiffs motion for summary judgment be DENIED and defendant Harvard Apparatus, Inc.’s motion for summary judgment be ALLOWED. It is further DECLARED that New Harvard is not a successor corporation and is not liable for any judgment that Cowen might obtain against Harvard Clinical.

This product, ultimately named the Harvard 2 dual syringe pump, is the subject of this litigation. Cowen adds other medical assets of Old Harvard in his “supplement and correction to his Rule 9A(B)(5) statement.” This merely reinforces the court’s conclusion that New Harvard did not purchase “substantially all” of Old Harvard’s assets.

The only evidence Cowen presents to dispute these facts is contained in the affidavit of his attorney, Edward Rudnitsky (“Rudnitsky”). This Court is not considering this affidavit because it is not based upon personal knowledge, but rather it is based upon information that Rudnitsky gleaned from his client. If Rudnitsky desires to testify as to the facts of this case, then he must withdraw as counsel in order to avoid a conflict of interest. See S.J.C. Rule 3:07, 3.7 (“A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where . . ."j.