McCann, J.
This matter comes before the Court on a motion for summary judgment by the defendant, Superior Oil, Inc. Superior Oil asserts that it is not liable for damages incurred by the plaintiff, Eaton Farm Confectioners, Inc., in remediating the leakage of roughly eighty gallons of heating oil from a storage tank located on the plaintiffs property. For the reasons set forth below, the defendant’s motion is ALLOWED.
BACKGROUND
The undisputed facts viewed in the light most favorable to the plaintiffs, as revealed by the summary judgment record, are as follows.[1]
Sometime in 1989 or 1990, Eaton Farm installed a new oil tank on its premises. From January 1994 to March 2003, Eaton Farm relied on Superior Oil to fill the tank with heating oil.
Despite this ongoing relationship, there was no written service or supply contract between the two parties. However, pursuant to an informal oral agreement, Superior Oil supplied heating oil on an as-needed basis, provided an annual burner maintenance service and responded to service calls when summoned by Eaton Farm.
On or about May 31, 2000, Superior Oil, as a part of an annual service program, applied Tank-Guard corrosion inhibitor to Eaton Farm’s oil tank. Prior to the application, Superior Oil did an inspection, in accordance with Tank-Guard’s prescribed procedure, to confirm that the tank did not have any interior corrosion. Eaton Farm was subsequently billed for the procedure and was sent the “Tank-Guard_ Annual Limited Warranty” with the service invoice.
On or about August 24, 2000, Eaton Farm called Superior Oil complaining that it did not have any hot water. Superior Oil, in turn, sent a technician to the premises to service the oil burner. After making an initial inspection of the unit, the technician notified Eaton Farm that the tank might have an algae problem. The technician then changed the filters and treated the tank with a bio-diesel oil.[2]
On November 22, 2000, Superior Oil supplied Eaton Farm with 80.4 gallons of heating oil. However, just two days later, Eaton Farm again called Superior Oil, this time complaining that it had lost heat. A subsequent inspection of the burner unit revealed that the tank was empty. Upon further inspection, the technician found a pencil-sized oxygen corrosion hole in the underbelly of the tank. As a result of the corrosion hole, nearly all of the heating oil supplied two days prior had seeped into the surrounding area. Over the following nine months, Eaton Farm hired several different environmental clean-up companies to extract and remove the contaminated soil in compliance with Department of Environmental Protection standards. Eaton Farm then filed a two-count complaint against Superior Oil in this Court for breach of contract and negligence to recoup the damages it allegedly incurred as a result of remediating the release of the oil. Superior Oil now moves for summary judgment on both counts of Eaton Farm’s complaint.
DISCUSSION I. Standard of Review
Summary Judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.RCiv.P. 56(c); Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Pederson, 404 Mass, at 17.
II. Eaton Farm’s Breach of Contract Claim Must Fail
Under Count I of its complaint, Eaton Farm asserts a breach of contract claim arising out of Superior Oil’s *251 alleged failure to replace the corroded tank. Eaton Farm contends that its on-going relationship with Superior Oil and the Tank-Guard limited warranty created an affirmative duty on the part of Superior Oil to both inspect its tank and replace it when necessaiy. Eaton Farm argues further that under the warranty, Superior Oil should have replaced the tank when it discovered the algae problem and its subsequent failure to do so resulted in the oil leak. This Court finds that Eaton Farm’s arguments under Count I of its complaint are wholly unsubstantiated by the summary judgment record and are contrary to the plain language of the Tank-Guard limited warranty.
As an initial matter, Eaton Farm failed to put forth any evidence that it had a binding agreement with Superior Oil to inspect its oil tank. The mere recitation of the words “tank insurance” on Eaton Farm’s invoice was insufficient to establish a separate contract to regularly inspect the tank.[3] For a contract to be valid and enforceable, the essential terms of the agreement must be ascertainable. Novel Iron Works, Inc. v. Wexler Constr. Co., 26 Mass.App.Ct. 401, 408 (1988). In this case, there was no written agreement between the parties and Eaton Farm failed to put forth any evidence that the parties manifested an assent to the essential term that Superior Oil would continually inspect the tank. Indeed, this is evidenced by the fact that Lynwood Eaton, the former President and owner of Eaton Farms, did not know what the words “tank insurance” covered. Mr. Eaton can not be said to assent to what he did not know. Accordingly, the parties’ relationship and informal agreement can not be said to have included the duly to inspect the tank.
Next, even assuming that the Tank-Guard limited warranty was binding upon Superior Oil,[4] the plain language of the warranty did not impose upon Superior Oil an affirmative contractual duty to either inspect the tank after application of the product or to replace the tank when it was determined that it might have an algae problem. The relevant portion of the warranty provides as follows:
When your eligible aboveground heating oil tank ... is treated with TANKGUARD_, Lincoln Labora-toxy, . . . the manufacturer of TANK-GUARD_ provides the following limited warranty for one year from the date of invoicing: if during this period your aboveground tank leaks from internal corrosion which TANK-GUARD_ has failed to prevent, you will be eligible to receive a new replacement tank per the details below. Leak verification is required.
This language is not susceptible to the broad interpretation that Eaton Farm asserts. Indeed, this provision provides only for the replacement of the covered tank if and only if there is a verified leak caused by internal corrosion, which Tank-Guard failed to prevent. Thus, absent a separate agreement, Superior Oil did not have an affirmative duly to either continually inspect the tank or replace it when the presence of an algae was discovered.[5]
Furthermore, it is also unclear whether either Superior Oil or Lincoln Laboratory should have assumed any obligations even after the leak was verified. As of this motion, Eaton Farm has yet to come forth with any evidence that the leak was the result of internal, rather than external, corrosion or that the application ofTank-Guard failed to prevent that corrosion. From this Court’s review of the defendant’s answers to interrogatories, it does not appear that Eaton Farm will have expert testimony to support this portion of its claim. Indeed, Lyn-wood Eaton has indicated that he will be the sole witness to testify that the tank should have been replaced. Therefore, in the absence of any evidence showing that Eaton Farm can prove either a binding oral contract to inspect and replace the tank or similar coverage under the limited warranty, Eaton Farm’s breach of contract claim under Count I of its complaint must fail.
III. Eaton Farm’s Negligence Claim Must Fail
Under Count II of its complaint, Eaton Farm asserts a negligence claim arising out of Superior Oil’s failure to remove the tank when it was allegedly in a condition such that it should have been replaced. Eaton Farm argues that Superior Oil’s failure to replace the tank when it discovered the potential algae problem resulted in the release of oil and the subsequent contamination of the surrounding soil. In a negligence action “the plaintiffs bear the burden of proving that the defendant committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant’s negligence caused their loss.” Glidden v. Maglio, 430 Mass. 694, 696 (2000), citing Restatement (Second) of Torts §281 (1965).
In the instant case, Superior Oil had a contractual duty to replace Eaton Farm’s tank only if a verifiable leak arose that was caused by internal corrosion, which Tank-Guard failed to prevent. Arguably, Superior Oil also assumed a duty to warn Eaton Farm of any potential risks if it discovered any leaks or corrosion while servicing and filling the burner unit. Eaton Farm, however, claims that Superior Oil breached its duty when it negligently failed to replace its tank upon the discovexy of an algae problem. This argument must fail for two reasons. First, the mere presence of algae does not amount to a verified leak, which is required for replacement of a tank under the limited warranty. Thus, Superior Oil’s contractual duty to replace the tank was not triggered at the time that the algae problem was discovered. Second, Superior Oil has come forth with evidence that the presence of algae in an oil tank has no relation to corrosion in the tank. Moreover, Eaton Farm has not presented any evidence that the tank was either leaking or at risk to leak at the time the algae problem was discovered. Indeed, the only evidence that Eaton Farm has produced in response to Superior Oil’s assertion is that a sludge buildup was noted on an invoice from Superior Oil. This evidence, even considered in the *252 light most favorable to Eaton Farm and with all inferences drawn in its favor, simply does not show that it can meet its burden of proving that Superior Oil negligently failed to remove the tank. Accordingly, because Eaton Farm has not met its burden on the essential element of breach, summary judgment on Count II of the plaintiffs complaint is proper.
ORDER
For the reasons stated herein, it is hereby ORDERED that the Defendant’s Motion for Summary Judgment on both counts of the plaintiffs complaint is ALLOWED.

Massachusetts Superior Court Rule 9A(b)(5) mandates that “each opposition to amotion for summary judgment shall include a response, using the same paragraph numbers, to the moving party’s statement of facts as to which the moving party claims there is no genuine issue to be tried, in consecutive numbered paragraphs, a concise statement of any additional material facts as to which the opposing party contends there is a genuine issue to be tried, with page or paragraph references to supporting . . . answers to interrogatories . . .” The plaintiff, in its Response to Defendant’s Motion for Summary Judgment, wholly failed to comply with this provision. Accordingly, the acts asserted in the defendant’s Rule 9A(b)(5) statement are deemed admitted.

There was no evidence presented that the lack of hot water stemmed from a lack of heating oil.

Moreover, despite the fact that Superior Oil was the only professional in contact with the tank, the summary judgment record does not reveal any evidence that a continual duty to inspect the tank arose from any other portion of the parties’ existing relationship.

Nhe warranty was actually made on behalf of Lincoln Laboratory, the manufacturer of Tank-Guard. Liability for breach of warranty, however, typically extends to manufacturers, sellers and suppliers of goods. Guzman v. MRM/Elgin, 409 Mass. 563, 567 (1991); Hitchcock v. Emergency Lighting & Systems, Inc., 12 Mass.App.Ct. 930, 930 (1981). Superior Oil, however, relying on Axion Corp. v. G.D.C. Leasing Corp., 359 Mass. 474, 483 (1971), argues that the Tank-Guard limited warranty is not applicable in this particular case because the warranty was not part of the “basis of the bargain” between the two parties. Superior Oil concludes that if the warranty was not part of the basis of the bargain, it can not be considered an express warranty under UCC 2-313. The record, viewed in the light most favorable to Eaton Farm, shows that Superior Oil applied Tank-Guard as part of an annual service on the burner. An invoice for the service, including the Tank-Guard warranty, was then sent to Eaton Farm. Eaton Farm then concluded the transaction by paying the total amount requested. Having made payment for tank insurance and being in physical possession of the warranty, it can not be said that Eaton Farm did not bargain for a form of tank coverage. The fact that Eaton Farm did not read through the boilerplate language of the warranty does not preclude a finding that the warranty was part of the basis of the bargain.

his Court also takes notice of the uncontroverted statement of Thomas Capistron, the President of Superior Oil, that the presence of algae had no relation to the corrosion in the tank.