**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 12-2014

EDWIN DEJESUS; MARIA L. CARTAGENA,

Plaintiffs, Appellants,

v.

PARK CORPORATION,

Defendant, Appellee,

BERTSCH, INC.

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,[*] Associate Justice,
and Torresen,[**] District Judge.

Benjamin R. Zimmermann, with whom Sugarman and Sugarman, P.C. was on brief, for appellant.
Stanley Yorsz, with whom Bradley J. Kitlowski, Buchanan Ingersoll & Rooney PC, David M. Rogers, Campbell Campbell Edwards & Conroy PC were on brief, for appellee.

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

[**] Of the District of Maine, sitting by designation.

August 1, 2013

**SOUTER, Associate Justice**. Edwin DeJesus and Maria L. Cartagena appeal the district court's summary judgment for Park Corporation, in which the court rejected appellants' tort and warranty claims against Park under a theory of corporate successor liability. We affirm.

I

DeJesus allegedly suffered injuries from a defective machine manufactured in 1957 by Bertsch, Inc. Although it was begun as a family-owned business, 80 percent of Bertsch shares were sold in 1978 to Deem International, Inc., leaving three living non-Deem shareholders of Bertsch, each of whom continued to work for the successor company. Six years later, appellee, Park, began negotiations to acquire Bertsch, culminating in Bertsch's liquidation through bankruptcy and Park's acquisition of various assets through an Asset Purchase Agreement. Park bought Bertsch's patents, copyrights, licenses, know-how, the trade name "Bertsch," trademarks, customer lists, addresses and names of contact persons, but the Agreement provided explicitly that Park was not "undertaking the assumption of any liabilities of Seller," J.A. 180. Bertsch stock was not exchanged for stock in Park, nor did any alternative indication of business control by the prior Bertsch owners survive the sale.

Following the sale, none of Bertsch's directors or officers became directors or officers at Park, although two of the

three living Bertsch shareholders became Park employees. Park retained a small number of Bertsch's other employees, held itself out to customers as Bertsch, sold the same products as Bertsch, and answered the phones with the message, "Thank you for calling Bertsch." J.A. 340. Park assumed Bertsch's liabilities under processed purchase orders but asked that all orders issued after the acquisition be resubmitted to Park. Park never operated out of Bertsch's primary production plant and sold much of Bertsch's real property upon acquisition.

DeJesus and his wife, Cartagena, filed a complaint in state court against Bertsch and Park in 2011, alleging negligence, breach of warranty, and loss of consortium. Park removed the action to district court and moved for summary judgment on the ground that Massachusetts law generally declines to recognize corporate successor liability and that no exception to that rule was applicable.

The district court agreed, rejecting appellants' contention that Park's acquisition of Bertsch was not a mere asset sale but a de facto merger that would deprive Park of the benefit of the general rule of successor non-liability. The district court held that the absence of shareholder continuity (or some equivalent continuous control structure) foreclosed appellants' claim: "Under Massachusetts law, a de facto merger does not occur absent a showing that there is a continuity of shareholders or other type of

transaction that ultimately makes Bertsch's shareholders directly or indirectly constituent owners of Park." DeJesus v. Bertsch, Inc., 898 F. Supp. 2d 353, 361 (D. Mass. 2012). Because "[n]o evidence provided by DeJesus and Cartagena suggest[ed] that Bertsch remained in control or ownership of the company after Park's asset buy . . . . as matter of law, DeJesus and Cartagena fail[ed] to demonstrate that there was a de facto merger." Id. at 363. The court also rejected appellants' alternative argument that Park expressly or impliedly assumed Bertsch's liabilities.

We review the district court's judgment de novo, see McDonough v. Donahoe, 673 F.3d 41, 46 (1st Cir. 2012), under the rule that summary judgment is proper where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All reasonable inferences are to be drawn in favor of the non-moving party (in this case, appellants), see Rared Manchester NH, LLC v. Rite Aid of N.H., Inc., 693 F.3d 48, 52 (1st Cir. 2012), and we "may affirm on any basis apparent from the record," Boston Prop. Exch. Transfer Co. v. Iantosca, No. 11-2475, 2013 WL 2533558, at *7 (1st Cir. June 12, 2013) (citing Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 5 (1st Cir. 2007)).

II

A

-5-

Appellants say it was error for the district court to require, in practical terms, a showing of continuity of shareholders to demonstrate a de facto merger, because Massachusetts courts have routinely held that no one factor of the relevant four-factor test is dispositive. They argue that the district court misconstrued the two Massachusetts cases on which it primarily relied. See Cargill, Inc. v. Beaver Coal & Oil Co., 676 N.E.2d 815 (Mass. 1997); McCarthy v. Litton Indus., Inc., 570 N.E.2d 1008 (Mass. 1991).

We think the district court reached a sound result under the state law. We start from the undisputed premise that Massachusetts courts generally "follow the traditional corporate law principle that the liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets." Guzman v. MRM/Elgin, 567 N.E.2d 929, 931 (Mass. 1991). But to ensure the "fair remuneration of innocent corporate creditors," Milliken & Co. v. Duro Textiles, LLC, 887 N.E.2d 244, 255 (Mass. 2008), this default rule has four exceptions that impose successor liability where "(1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the

predecessor," id. at 254-55 (quoting Guzman, 567 N.E.2d at 931).

Appellants argue only for the de facto merger exception here.

In determining whether de facto merger is a fair conclusion, Massachusetts courts "generally consider" four factors:

> whether (1) there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; whether (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; whether (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and whether (4) the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

Cargill, 676 N.E.2d at 818. Critically, we note that the Supreme Judicial Court of Massachusetts has repeatedly instructed that "'[n]o single factor [of these four] is necessary or sufficient to establish a de facto merger.'" Milliken, 887 N.E. 2d at 255 (quoting Cargill, 676 N.E. 2d at 818).

We have also identified the overlap in the criteria of the de facto merger exception with those of the "mere continuation" exception. See Dayton v. Peck, Stow and Wilcox Co., 739 F.2d 690, 693 (1st Cir. 1984); see, e.g., Milliken, 887 N.E.2d at 254 n.15 ("The terms 'de facto merger' and 'mere continuation' are often

-7-

used by courts interchangeably."); <u>Nat'l Gypsum Co.</u> v. <u>Cont'l Brands Corp.</u>, 895 F.Supp. 328, 336 (D. Mass. 1995) ("While these two labels have been enshrined separately in the canonical list of exceptions . . . they appear, in practice[,] to refer to the same concept . . . ."); <u>In re Acushnet River & New Bedford Harbor Proceedings</u>, 712 F. Supp. 1010, 1019 n.15 (D. Mass. 1989) ("[T]he distinction between the two exceptions seems more apparent than real. Upon examination, the de facto merger exception subsumes the continuation exception."). To fall within the "mere continuation" exception, Massachusetts courts have required "at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets." <u>McCarthy</u>, 570 N.E.2d at 1013. These exceptions, de factor merger and mere continuation, both exist to ensure that a seller cannot shield itself from past torts through a transaction in which it retains equity or some other mechanism of continuing control but vanquishes liability.

As for what could not support an exception to the successor non-liability rule, Massachusetts courts have suggested that they would not adopt a related, independent exception embraced by other jurisdictions, that of "continuation of enterprise." "Continuity of enterprise analysis does not require that the predecessor and successor corporations have common shareholders . . . as does the more traditional continuation exception." <u>Id.</u>;

-8-

see also id. at 1013 n.6 (describing the "continuation of enterprise" exception as "distinctly a minority approach"); Nat'l Gypsum Co., 895 F. Supp. at 340 (finding no "continuity of enterprise" exception in Massachusetts law and following "the traditional de facto merger or continuation analysis, with its keystones of continuous ownership and inequitable conduct").

With this framework in mind, we agree with appellants that to the extent the district court considered continuity of ownership as a necessary condition for de facto merger, the court stepped beyond the Massachusetts cases and their repeated admonitions that no factor of the four-factor test is necessary. See, e.g., Cargill, 676 N.E.2d at 818; Milliken, 887 N.E.2d, at 255. Thus, the district court's statement that "a de facto merger does not occur absent a showing that there is a continuity of shareholders," DeJesus, 898 F. Supp. 2d at 361, was a stretch too far, and summary judgment cannot be based exclusively on the absence of continuity of ownership. But this does not mean reversal, because we may still affirm if the summary judgment record reveals materially undisputed facts that entitled Park to judgment as a matter of law. See Hoyos, 488 F.3d at 5. We think that is so here.

The Massachusetts cases show that the Commonwealth identifies the direction indicated by the four factors in synergy together, allowing the relative significance of each to vary up or

down when weighed independently case by case. Here, the facts bearing on two of the four factors militate in favor of finding a de facto merger, as Park does not seriously dispute. The record, first, unequivocally indicates that Bertsch, as a legal entity, "cease[d] its ordinary business operations" after the purchase. Cargill, 676 N.E.2d at 818. And, second, it is equally clear that Park assumed Bertsch's obligations that were "ordinarily necessary for the uninterrupted continuation of normal business operations." Id.

But the appellants' position weakens when we look to the next factor. Whether "there [wa]s a continuation of [Bertsch in the sense of] continuity of management, personnel, physical location, assets, and general business operations" is a mixed bag. Id. On the one hand, Park maintained continuity with Bertsch's general business operations and assumed its assets. But, on the other, it did not continue to operate Bertsch's primary production facilities and only kept a handful of Bertsch's management and personnel. This factor points both ways.

As a consequence, the case turns on the weight to be given the final factor: continuity of shareholders or other continuing control device. This element is a clear win for Park, as the record makes plain that none of Bertsch's shareholders became owners of Park, and appellants have not raised a material dispute to the contrary. Indeed, in the district court "it [was]

undisputed that Bertsch's shareholders did not retain any type of ownership or [non-stock] control over the business after the asset sale to Park." DeJesus, 898 F. Supp. 2d at 361. This factor, therefore, cuts sharply against a finding of de facto merger.

And its significance is substantial. In a previous reading of Massachusetts common law, we spoke of the continuity of shareholders as a "key requirement[]" in determining whether a de facto merger exists sufficient to permit successor liability. Dayton, 739 F.2d at 693. That continues to be the best understanding of how Massachusetts courts have actually implemented this doctrine, and appellants point to no Supreme Judicial Court decision finding a de facto merger in the absence of at least some continuity of ownership. Cf. In re Acushnet, 712 F.Supp. at 1015-17 (continuity found when sellers received stock of buyer's parent); Milliken & Co. v. Duro Textiles, LLC, 2005 WL 1791562, at *10 (Mass. Super. Ct. 2005) (citing In re Acushnet approvingly for the proposition that "it would be unduly technical to limit the de facto merger doctrine to asset sales made solely with the purchaser's own stock"), aff'd, 887 N.E.2d 244. Similarly, district courts applying Massachusetts law have prized this factor among the others. See, e.g., Am. Paper Recycling Corp. v. IHC Corp., 707 F. Supp. 2d 114, 121 (D. Mass. 2010) (rejecting de factor merger claim where the predecessor acquired only 3.2% ownership of the successor); Goquen v. Textron Inc., 476 F. Supp.

-11-

2d 5, 12-15 (D. Mass. 2007) (rejecting de factor merger claim where there was no evidence of continuity of ownership).  The best case for appellants appears to be Cargill, in which the predecessor acquired 12.5% of the shares of the successor corporation, but even there, the SJC explained that this transaction did "not constitute shareholder continuity in its fullest sense."  676 N.E.2d at 819.

Although we do not understand the state law to be that continuity of shareholders is absolutely required, it remains a very weighty factor in identifying a de facto merger.  Where, as here, there is no shareholder continuity or any alternative means of continuity of control, and one of the remaining three factors is equivocal, we conclude that no such merger occurred and that the district court correctly decided that Park has no liability for Bertsch's torts.[1]

B

_____

[1]Appellants' arguments to the contrary focus almost exclusively on the district court's absolute rule, which goes too far, or stem from reliance on Massachusetts lower court decisions, e.g., Lanee Great Plastic Co., Ltd. v. Handmade Bow Co., No. SUCV200705245, 2010 WL 6650330 (Mass. Super. Ct. Dec. 26, 2010); Dominguez v. Ruland Mfg. Co., No. 20081564, 2009 WL 3083865 (Mass. Super. Ct. Aug. 13, 2009); Mass Printing & Forms, Inc. v. RKS Health Ventures Corp., 2000 WL 744564 (Mass. Super. Ct. 2000).  The latter are of no moment to our analysis because we are bound to "take [the] law in diversity cases from the state's highest court once that court has spoken on point."  EMC Corp. v. Arturi, 655 F.3d 75, 78 (1st Cir. 2011).  Our decision follows without deviation from the framework outlined by the Supreme Judicial Court.

In the alternative, appellants ask us to certify the question of the necessity for continuous ownership to the Supreme Judicial Court of Massachusetts.  But there is no need for that. Certification may be in order when we find "no controlling SJC precedent on the . . . question and the issue is determinative." See Boston Gas Co. v. Century Indemn. Co., 529 F.3d 8, 15 (1st Cir. 2008), but the SJC's statements of the standard have rejected absolute necessity, see Cargill, 676 N.E.2d at 818, and our conclusion does not assume otherwise.

### III

The judgment of the district court is affirmed.

It is so ordered.