In this case we consider whether the defendant companies, T & C Main Street, Inc., and T & C Main, LLC (collectively, new T & C corp.), are the corporate successors to Tess & Carlos, Inc. (old corp.). After a bench trial, a Superior Court judge ruled that "[new T & C corp.] is in essence [old corp.] wearing a new hat," and that new T & C corp. accordingly was responsible for the debts of old corp. The facts found by the Superior Court judge, however, show that new T & C corp. was not a successor to all, or substantially all, of the assets of old corp. and thus that the legal doctrines that could impose successor liability on new T & C corp. do not apply. We accordingly reverse.
Background. 1. Old corp. and the formation of new T & C corp.[3] Old corp., the original Tess & Carlos, Inc., began business in 1995 selling primarily women's clothing. There were two principals: Tess Enright, who owned fifty-one percent of the stock, and Carlos Pava, who owned forty-nine percent. Enright did the purchasing and selling of the merchandise, and developed the relationships with customers and vendors. Pava was responsible for design and construction of the stores.
From 1995 until roughly 2007, old corp. operated without significant financial issues, primarily out of two stores -- one in Newton and one in Cambridge. As of 2008, the Newton store was the central operating location. The Cambridge store merchandise was ordered and stocked out of the Newton store.
By 2008, however, old corp. was struggling. It had made a series of business moves that had not worked out, and had incurred substantial debt. One unsuccessful business move was opening a store on Newbury Street in Boston in 2006; that store closed in 2009. During this time the relationship between Enright and Pava also deteriorated, both personally and professionally. Pava was not involved in the business operations of old corp. after 2009.
In 2011, Enright formed the two new corporations, T & C Main Street, Inc., and T & C Main, LLC. Defendant T & C Main, LLC, was incorporated in April, 2011, to operate a clothing store named "Tess & Carlos" in Concord; defendant T & C Main Street, Inc., was incorporated in September, 2011, to operate a "Tess & Carlos" clothing store in Pittsford, New York. Enright was and is the sole officer and director of both of these new corporations. Pava never had an interest or involvement in either of them. According to Enright, T & C Main, LLC, ceased operations shortly after T & C Main Street, Inc., was formed, and accordingly T & C Main Street, Inc., is the new T & C corp. that currently operates.[4]
Both of the new T & C corp. stores sold women's clothing at retail, much as the Newton and Cambridge stores did. The judge found that "[a]t least part of the reason for the formation of these two entities was to provide Ms. Enright with a 'fresh start' apart from the personal and professional involvement with Mr. Pava and without debt accumulated during that professional involvement in Tess & Carlos, Inc." He also found that "[t]here was no sale of the assets of [old corp.] to either [new T & C corp.]" Thus, as of September, 2011, Enright was operating four stores: two through new T & C corp., in which Pava had no interest, and two through old corp.
2. The cessation and winding up of old corp. Old corp. ceased operations in its Cambridge and Newton stores over the twelve months following September, 2011, but the manner in which it did so differed markedly by store. As to the Cambridge store, T & C Main Street, Inc., "assumed the operation" in "late 2011." Before it assumed the operation in Cambridge, all of the merchandise of old corp. in Cambridge was packaged and shipped to the Newton store. T & C Main Street, Inc., then acquired, stocked, and sold new merchandise in Cambridge. However, the Cambridge store kept the same name -- "Tess" -- as well as the same location, telephone number, and Website address.[5]
As to the Newton store, old corp. continued to operate that store for another year, until the store eventually closed in October of 2012. At that point old corp. ceased operations. The remaining old corp. merchandise was either packaged and labeled for storage, or returned to the vendors for credit. Some vendors of old corp. received at least partial payments, and went on to do business with new T & C corp. Many old corp. vendors, however, were not paid for their goods.
Plaintiff Fashionhaus, LLC, was a supplier of merchandise to old corp. Fashionhaus, LLC, ceased selling to old corp. in 2006, and never did business with either T & C Main Street, Inc., or T & C Main, LLC. When it did not receive payment, it sued and obtained a judgment against old corp. in 2013. When execution was returned unsatisfied, it initiated this action against new T & C corp., asserting among other things, that new T & C corp. was liable as the legal successor to old corp.
On the above facts, the Superior Court judge concluded that defendant T & C Main Street, Inc., was "in essence" old corp. and that new T & C corp. was responsible for the debts of old corp. under doctrines of corporate successor liability. We disagree.
Discussion.[6] In general, a corporation is not responsible for the debts of another corporation absent a contractual obligation. See Scott v. NG US 1, Inc., 450 Mass. 760, 766-767 (2008). Corporations are distinct and separate entities, with distinct and separate assets and liabilities. See Gordon Chem. Co. v. Aetna Cas. & Sur. Co., 358 Mass. 632, 638 (1971) ; Scott, 450 Mass. at 766-767. There are well-established exceptions to these general rules, however, under which a successor corporation can be liable for the debts of a predecessor corporation.
In Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 475 (2013), quoting from Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 556 (2008), the Supreme Judicial Court stated the exceptions as follows:
"[T]he liabilities of a selling predecessor corporation are not imposed upon the successor corporation which purchases its assets, unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor" (emphasis omitted).
The plaintiff here relied primarily on two of these exceptions -- the so-called "de facto merger" and the "mere continuation" doctrines -- in asserting new T & C corp.'s successor liability.[7]
The court in Premier Capital emphasized, however, that "[i]n order for one corporation to be deemed a successor corporation in the first place, it must be a successor to all, or substantially all, of another corporation's assets." Ibid., quoting from National Soffit & Escutcheons, Inc. v. Superior Sys., Inc., 98 F.3d 262, 266 (7th Cir. 1996). This transfer of assets requirement accordingly is a threshold requirement; there can be no successor liability, under any of the commonly recognized doctrines including "de facto merger" or "mere continuation," absent a showing that "all, or substantially all," of the predecessor's assets were transferred to the successor. Ibid.
The plaintiff's claim founders on this threshold requirement. The facts found by the Superior Court judge, which neither party challenges, show that perhaps the most significant asset of old corp. -- its merchandise -- was never transferred to new T & C corp. Rather, old corp. retained that merchandise and either sold it, liquidated it, or returned it to vendors. Moreover, no assets from old corp.'s principal store in Newton were transferred to new T & C corp. The Newton store instead continued to operate for over a year after new T & C corp. commenced operations; eventually old corp. ceased operations and its business was wound up.
On this record there can be no finding of a transfer of all, or substantially all, of the assets of old corp. to new T & C corp. Indeed, the judge did not make such a finding, instead stating that "[t]here was no sale of the assets of [old corp.] to [new T & C corp.]."
We recognize that there were facts present in this case that pointed in the opposite direction, toward successor liability. New T & C corp. took over the operations of the Cambridge store, and that store essentially continued in operation, with no outward signs of change. We are inclined to believe that new T & C corp. acquired some of old corp.'s assets at that time -- at the least, the goodwill associated with the location, customers, and ongoing business in Cambridge.[8] These facts, in isolation, have some of the earmarks of the "mere continuation" doctrine. And we recognize, as well, that the factual record presented was complicated and tangled because, as the judge found, Enright "largely ignored" corporate formalities as she conducted her businesses.
Nevertheless, despite evidence of the transfer of some assets, the bulk of the assets of old corp. were never transferred to new T & C corp. including, in particular, old corp.'s merchandise, and the assets associated with the Newton store. The uncontested facts thus show no sale of all or substantially all of old corp.'s assets to new T & C corp. and, accordingly, successor liability cannot attach. We are bolstered in this view because, even if the plaintiff could make the required threshold showing of a sale of assets, there are other critical aspects of the mere continuation and de facto merger doctrines that also are absent here. For example, the mere continuation doctrine generally requires "at a minimum: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets." Milliken, 451 Mass. at 557. These requirements were not met here, as old corp. had different shareholders than new T & C corp., and continued to operate in Newton for a substantial period, with its own assets, after new T & C corp. began operations. Similarly, several of the de facto merger factors also were not present here, including that, for example "the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible" (emphasis supplied). Ibid. Once again, the circumstances here did not consist of a merger of new T & C corp. with old corp., given the separateness that was maintained for the Newton store and its assets.
Finally, we note that the judge expressly found that the plaintiff did not establish that the defendants committed any fraud in connection with the transactions and business structures at issue. See Milliken, 451 Mass. at 556, quoting from Guzman v. MRM/Elgin, 409 Mass. 563, 566 (1991) (noting one basis for imposing liability upon a successor corporation could be whether "the transaction is a fraudulent effort to avoid liabilities of the predecessor").
Because on the uncontested facts there is not a basis to impose the liabilities of old corp. on the defendants, we reverse.
So ordered.
reversed

We recite the facts as found by the judge after a jury-waived trial. See Cavadi v. DeYeso, 458 Mass. 615, 624 (2011). Neither party has contested any of the factual findings.

The judge's decision accepts that T & C Main Street, Inc., is the currently operating entity, but imposes liability on both new T & C corporations. We do not distinguish between the two for present purposes. The judge found no documentation of the cessation of business by T & C Main, LLC, and expressly found that "[t]he formalities of corporate law and the distinctions between and among the various corporate entities were largely ignored by Enright as she conducted her businesses." While these failures increased the factual complexities of the case, they do not affect the outcome dictated by the judge's uncontested findings.

There was no lease in Cambridge; the arrangement was tenant-at-will.

We accept the judge's findings of fact unless they are clearly erroneous. We review the judge's legal conclusions de novo. See Cavadi v. DeYeso, 458 Mass. at 624.

The judge did not distinguish between these two doctrines in ruling for the plaintiff, and in light of our reasoning we need not do so, either.

The judge did not make a specific finding as to whether there was a transfer to new T & C corp. of the goodwill associated with the Cambridge store. Even assuming there was, such would not be sufficient to constitute a transfer of all, or substantially all, of old corp.'s assets.