**Gary W. CRUICKSHANK, Chapter 7 Trustee for Dolphinite, Inc., Plaintiff,**

v.

**CLEAN SEAS COMPANY, Defendant.**

**West Marine Products, Inc. and United States Fire Insurance Company, Plaintiffs,**

v.

**Gary W. Cruickshank, Chapter 7 Trustee for Dolphinite, Inc., and Clean Seas Company, Defendants.**

**Civil Action Nos. 03–11659–PBS, 04–10251–PBS.**

United States District Court, D. Massachusetts.

July 13, 2006.

Joanne L. Goulka, Griffin & Goulka, Stoneham, MA, Andrew D. Myers, Davis, Malm, & D'Agostine, P.C., Boston, MA, for Plaintiffs.

Kevin P. McCann, Michael J. Fioretti, Chance & McCann, Bridgeton, NJ, Marie Cheung–Truslow, Smith & Brink, P.C., Quincy, MA, Stephen H. Durant, Hedrick Dewberry Regan & Durant P.A., Jacksonville, FL, Scott L. Machanic, Cunningham, Machanic, Cetlin, Johnson & Harney LLP, Natick, MA, Karen A. Whitley, Charles R. Bennett, Jr., Hanify & King, Boston, MA, for Defendants.

SARIS, District Judge.

"I adopt the well-reasoned report and recommendation, without objection."

### REPORT AND RECOMMENDATION ON DEFENDANT CLEAN SEAS COMPANY'S MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

DEIN, United States Magistrate Judge.

## I. INTRODUCTION

The above-captioned consolidated actions involve a dispute over liability for defective marine paint. Defendant Clean Seas Company ("Clean Seas") formulated and patented the paint, contracted with Suntec Paint, Inc. ("Suntec") to mix the paint, and sold the mixed paint to Dolphinite, Inc. ("Dolphinite"). Dolphinite resold the paint to numerous wholesale customers, including plaintiff West Marine Products, Inc. ("West Marine"), which in turn sold the paint to end users. The paint

allegedly failed to perform properly and caused damage, some of which was irreparable, to boats and inflatables to which it was applied.

Dolphinite originally filed suit against Clean Seas and Suntec in state court. The matter was removed to this court in September 2003 and designated Civil Action No. 03–11659–PBS (the "Dolphinite Action"). Therein, Dolphinite, the originally named plaintiff, sought recovery of amounts that it had incurred and expected to incur as a result of the allegedly defective paints, as well as injunctive and declaratory relief. Subsequently, in February 2004, West Marine and its insurer, United States Fire Insurance Co. ("U.S. Fire"), filed Civil Action No. 04–10251–PBS (the "West Marine Action") in this court against Dolphinite, Clean Seas and Suntec seeking amounts that they have incurred and expect to incur in connection with the allegedly defective paints, including but not limited to costs required to settle the warranty claims of West Marine's customers and costs incurred in connection with the storage, handling and disposal of unsold and returned paints.

In April 2004, Dolphinite filed a Suggestion of Bankruptcy and a motion to stay the Dolphinite Action, which the court granted. The West Marine Action continued against Clean Seas and Suntec while the proceedings involving Dolphinite remained subject to the automatic bankruptcy stay. In October 2004, Clean Seas filed a motion to dismiss the strict products liability claim asserted against it in the West Marine Action, and a motion for summary judgment with respect to all of

the claims asserted against it in that Action. The court denied both of those motions without prejudice pending a determination of the jurisdictional issues that also had been raised in the case.

In 2005, after the Bankruptcy Court lifted the automatic stay with respect to Dolphinite, this court allowed the motions of Gary W. Cruickshank, the Chapter 7 Trustee for Dolphinite, Inc. ("Trustee"), to be substituted as the appropriately named party in both cases. Additionally, in November 2005, the West Marine Action was consolidated with the Dolphinite Action. Prior to consolidation, Suntec was dismissed from each action for lack of personal jurisdiction.

Currently pending before this court are Clean Seas' renewed motions to dismiss and for summary judgment in the West Marine Action (Docket Nos. 12 and 13). By its motion to dismiss, Clean Seas is seeking dismissal, pursuant to Fed. R.Civ.P. 12(b)(6), of Count XVI of the plaintiffs' Complaint,[1] which asserts a claim against Clean Seas for strict products liability. By its motion for summary judgment, Clean Seas is seeking summary judgment, pursuant to Fed.R.Civ.P. 56, on the plaintiffs' claims for breach of express warranties (Count XIII), breach of implied warranties of merchantability (Count XIV), breach of implied warranties of fitness for a particular purpose (Count XV), strict products liability (Count XVI), negligence (Count XVII), common law indemnity (Count XVIII) and a declaratory judgment establishing Clean Seas' obligation to indemnify the plaintiffs for all of the costs,

1. When Clean Seas filed its motions to dismiss and for summary judgment, they were directed to the original Complaint in the West Marine Action. Since then, the plaintiffs have filed an Amended Complaint which repeats the original claims and adds contribution claims against Clean Seas and Dolphinite.

Citations to the Complaint shall be to the Amended Complaint filed as Docket No. 60–2. The new contribution claim against Clean Seas, which is set forth in Count XXI of the Amended Complaint, is not addressed by the present motions.

losses, liabilities, expenses and attorneys' fees incurred and to be incurred by West Marine in connection with the defense and administration of customer claims concerning the allegedly defective paints (Count XIX). For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Clean Seas' motion to dismiss Count XVI be ALLOWED and that Clean Seas' motion for summary judgment be ALLOWED with respect to Counts XIII, XIV, XV and XVII, and DENIED with respect to Counts XVIII and XIX.

## II. *STATEMENT OF FACTS*[2]

Defendant Clean Seas is a Florida corporation, which has its only office in Jacksonville, Florida. (DF ¶1). It manufactures patented paint products for the marine industry and sells them to distributors in several states. (*Id.* ¶2; Compl. ¶10). One of its distributors was defendant Dolphinite, a Massachusetts company which, at all relevant times, was a manufacturer and distributor of marine products, including boat hull paints. (DF ¶2; Compl. ¶9).

Plaintiff West Marine is a California corporation which sells marine boating products to consumers through retail stores, catalogs, wholesale distribution and internet distribution sales. (Compl.¶8). Plaintiff U.S. Fire is the general liability insurer for West Marine. (*Id.*). In September 2002, West Marine entered into a written agreement with Dolphinite under which West Marine agreed to purchase products from Dolphinite for the purpose of reselling them to West Marine's customers. (DF ¶9). Clean Seas was not a party to the contract between West Marine and Dolphinite. (*Id.* ¶10).

In January 2003, Clean Seas entered into a Distribution Agreement with Dolphinite pursuant to which Dolphinite agreed to purchase and distribute to its customers a marine coating that was patented by Clean Seas and mixed by Suntec under a contractual arrangement between Clean Seas and Suntec. (*Id.* ¶¶3–5). In accordance with the Distribution Agreement, Dolphinite purchased the marine coating products from Clean Seas and resold them to its customers in sealed, pre-labeled containers under the Dolphinite brand "Go Fast Paint" and "Go Fast Inflatable Bottom Paint." (*Id.* ¶3; Compl. ¶16). According to Clean Seas, it did not advertise the "Go Fast" paints, sell them to any entity other than Dolphinite, or make any warranties with respect to the paints to anyone other than Dolphinite. (DF ¶6; Polsenski Aff. ¶6). Furthermore, Clean Seas exercised no control over Dolphinite's distribution of the paints or any other product. (DF ¶7). West Marine purchased the "Go Fast" paints from Dolphinite pursuant to the terms of its 2002 agreement with Dolphinite. (Compl.¶18). West Marine claims that it bought the paints based on representations and warranties that the products would adhere to boat hulls, be easy to apply, kill marine growth on hulls to which they were applied, and increase the speed of the boats and inflatables to which they were applied. (*Id.* ¶16). Clean Seas has never contracted with or solicited business from West Marine for the sale or distribution of marine paints. (DF ¶8). Moreover, Clean Seas was not aware of Dolphinite's contract with West Marine or of its deci-

---

**2.** The facts are derived from the "Statement of Material Facts of Record as to Which There is No Genuine Issue to be Tried in Support of Clean Seas, Inc.'s Motion for Summary Judgment on All Counts Against It" (Docket No. 15) ("DF") and the attached Affidavit of Martin Polsenski ("Polsenski Aff."), which have not been opposed by the plaintiffs.

sion to sell the "Go Fast" paints to West Marine. (*Id.* ¶ 5).

West Marine and U.S. Fire allege that the "Go Fast Paint" and the "Go Fast Inflatable Bottom Paints" failed to perform as Dolphinite warranted. (*Id.* ¶ 11; Compl. ¶ 20). In particular, the plaintiffs allege that when used as instructed, the paints failed to adhere to boat hulls, failed to prevent marine growth, were difficult to apply, and caused vessels to move at a slower speed instead of a faster speed. (Compl.¶¶ 20, 22). Moreover, the plaintiffs assert that as a result of the allegedly defective paints, West Marine's customers have suffered property damage to their boats, including but not limited to, marine growth on hulls and paint damage, and that some of the damage has rendered the boats unusable. (*Id.* ¶ 22).

The plaintiffs further claim that West Marine's customers have filed and are continuing to file claims against it, and that the plaintiffs have already incurred over $494,364 to settle those claims. (*Id.* ¶¶ 21, 23). Additionally, the plaintiffs allege that as a result of the defendants' actions, they have suffered various additional damages including, *inter alia*, amounts paid to Dolphinite for defective paints; costs incurred to market, ship, store and sell the paints; costs incurred in handling claims and complaints; loss of sales, good will and other business opportunities; costs incurred to enforce the contract between West Marine and Dolphinite; costs incurred to test the paints; attorneys' and other professionals' fees; and costs incurred in connection with the handling, shipping, storage and disposition of unused and returned product. (*Id.* ¶ 29).

### III. *ANALYSIS—CLEAN SEAS' MOTION TO DISMISS*

Clean Seas has moved, pursuant to Fed. R.Civ.P. 12(b)(6), to dismiss Count XVI of the Complaint on the grounds that Massachusetts does not recognize a distinct strict products liability cause of action. Because the plaintiffs have asserted separate breach of warranty claims under the Massachusetts Uniform Commercial Code ("UCC"), and there can be no strict liability cause of action apart from those claims, this court recommends that Clean Seas' motion to dismiss Count XVI be allowed.

### A. *Motion to Dismiss Standard of Review*

"In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). "A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 78 (D.Mass. 1998) (quotations and citations omitted). Here, the plaintiffs cannot support a claim for strict liability under any set of facts because no such claim is available under Massachusetts law.

### B. *Count XVI—Claim for Strict Liability*

In Count XVI, the plaintiffs claim that they are entitled to relief against Clean Seas under a theory of strict products liability because they were injured and sustained damages as a result of the allegedly defective marine paints. (Compl.¶¶ 120–23). However, Count XVI is not cognizable in Massachusetts.

■ "In Massachusetts, 'there is no strict liability in tort apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, §§ 2–314– 2–318.'" *Guzman v. MRM/Elgin,* 409

Mass. 563, 569, 567 N.E.2d 929, 932 (1991) (quoting *Swartz v. General Motors Corp.*, 375 Mass. 628, 629, 378 N.E.2d 61, 62 (1978)) (quotation marks omitted). Instead, "Massachusetts law of warranty is congruent in nearly all respects" with a strict liability theory of recovery. *Id.* The Supreme Judicial Court has specifically stated that it is unwilling to hold "that, apart from liability for breach of warranty under our statute, there may be liability without fault for defective products." *Mason v. General Motors Corp.*, 397 Mass. 183, 191, 490 N.E.2d 437, 442 (1986). Consequently, there is no independent claim of strict liability in tort under Massachusetts law, and the sole remedy for strict liability is provided under the UCC.

Reading the Complaint liberally, the strict products liability claim could be considered an alternative means of pleading breach of warranty. *See Mason*, 397 Mass. at 189, 490 N.E.2d at 441 (warranty liability under the UCC is "a remedy intended to be fully as comprehensive as the strict liability theory of recovery that has been adopted by a great many other jurisdictions") (internal citation omitted). However, the plaintiffs have specifically pleaded breach of warranty claims under the UCC. Because Massachusetts does not recognize a separate, additional claim for strict products liability, this court recommends that Count XVI be dismissed.

### IV. ANALYSIS—CLEAN SEAS' MOTION FOR SUMMARY JUDGMENT[3]

Clean Seas has also moved for summary judgment on all of the plaintiffs' claims against it, except for the contribution claim. *See* note 1, *supra.* In particular, Clean Seas is seeking summary judgment on the breach of warranty and strict liability claims asserted in Counts XIII–XVI on the grounds that there is no privity of contract between the parties, and to the extent that those claims constitute tort claims, because they are barred by the economic loss doctrine. Similarly, Clean Seas is seeking summary judgment, based on the economic loss doctrine, with respect to the plaintiffs' negligence claim asserted in Count XVII. Finally, Clean Seas asserts that if it is entitled to summary judgment on Counts XIII–XVII, it is also entitled to judgment on the indemnity claims alleged in Counts XVIII and XIX because the plaintiffs will not be able to establish fault on the part of Clean Seas.

This court finds that the breach of warranty claims are precluded by the parties' lack of privity. Additionally, this court concludes that the economic loss doctrine bars the plaintiffs' claims for breach of implied warranty and negligence. However, dismissal of those claims does not prevent plaintiffs from establishing fault on the part of Clean Seas, and, therefore, the plaintiffs may pursue their claims for indemnification. Consequently, this court recommends that Clean Seas' motion for summary judgment be allowed with respect to Counts XIII, XIV, XV and XVII, but denied with respect to Counts XVIII and XIX. In light of this court's recommendation that Clean Seas' motion to dismiss Count XVI be allowed, there is no need to analyze that claim under a summary judgment standard of review.

---

**3.** In their brief in opposition to Clean Seas' motion for summary judgment, the plaintiffs argued that the motion was premature because no formal discovery had been performed, and they requested an opportunity to conduct discovery prior to a decision on the motion. (Pls.' Opp. at 2–3). However, at oral argument, the plaintiffs stated that they did not require discovery for purposes of the present motions. Therefore, this court considers the plaintiffs' request for discovery pursuant to Fed.R.Civ.P. 56(f) to be withdrawn.

### A. *Summary Judgment Standard of Review*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant ... would permit a rational fact finder to resolve the issue in favor of either party." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (internal citations omitted). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Sanchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir.1996) (internal citations and quotation omitted). In order to defeat the entry of summary judgment, the nonmoving party must submit "sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994) (internal citations and quotations omitted). In evaluating motions for summary judgment, however, the court will not consider "conclusory allegations, improbable inferences, and unsupported speculation." *Galloza v. Foy,* 389 F.3d 26, 28 (1st Cir.2004) (internal citation omitted).

### B. *Privity of Contract*

 Clean Seas argues that it is entitled to summary judgment on the express and implied warranty claims asserted in Counts XIII, XIV and XV because there is no privity of contract between the parties.[4] The plaintiffs, relying on Mass. Gen. Laws ch. 106, § 2–318, contend that privity is not required to maintain their breach of warranty claims. Under § 2–318 of the Massachusetts UCC, lack of privity is no defense to breach of warranty claims asserted by consumers of allegedly defective products against a manufacturer. However, this court concludes that § 2–318 has not eliminated the privity requirement for commercial transactions like the one at issue in this case.

Section 2–318 of the UCC abolishes lack of privity between a plaintiff and defendant as a defense to breach of warranty claims in certain instances. It provides in relevant part:

> Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods.

Mass. Gen. Laws ch. 106, § 2–318. For a time, Massachusetts courts assumed that this provision eliminated the privity requirement for all breach of warranty actions regardless of the type of injury involved. *See Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 98 (D.Mass.1998), and cases cited. Thereafter, however, sev-

---

4. As the parties apparently recognize, there are no facts to support a claim that Clean Seas made any express warranties on which the plaintiffs (as opposed to Dolphinite) relied. For that reason, the express warranty count (Count XIII) should be dismissed. The privity and economic loss doctrine arguments addressed by the parties relate to tort-based claims, *i.e.,* the implied warranty claims.

eral opinions further defined the statute with the end result being that privity was found not to be required in claims by consumers but remained a requirement in suits, such as the instant one, brought in a commercial setting by a commercial retailer.

In *Bay State–Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350 (1989), the SJC concluded that § 2–318 applied only to tort-based warranty claims and not to claims, such as the instant one, seeking to recover for economic loss (including the cost of repair and lost profits) which are characterized as being contract-based. *Id.* at 107, 533 N.E.2d at 1353. "Because *Bay State–Spray* held that § 2–318 governs only tort-based actions, the traditional rule requiring privity in breach of warranty actions appeared to continue to govern contract-based actions." *Sebago, Inc.*, 18 F.Supp.2d at 98.

The issue was further addressed and refined by the SJC in *Jacobs v. Yamaha Motor Corp.*, 420 Mass. 323, 649 N.E.2d 758 (1995). There, the court went on to confirm that "[c]ontract-based warranty claims involving commercial transactions may generally call for different treatment than tort-based warranty claims." *Id.* at 330, 649 N.E.2d at 763. However, the court concluded, given the history and intent of the statutory scheme, that "contract-based warranty claims of buyers of consumer goods themselves deserve separate consideration" as well. *Id.* To effectuate the statutory purpose, the court concluded that § 2–318 authorized the "buyer of consumer goods to sue the manufacturer directly" for breach of implied warranties. *Id.* at 330–31, 649 N.E.2d at 763. Consumer goods are those that are "bought for use primarily for personal, family or household purposes." *Id.* at 327–28, 649 N.E.2d at 761 (quoting Mass.

Gen. Laws ch. 106, § 9–109(1)). Thus, the court concluded, "a buyer of consumer goods has the right to maintain an action for breach of the implied warranty of merchantability against the manufacturer of that product." *Id.* at 331, 649 N.E.2d at 763.

■ It is undisputed that West Marine did not purchase the paint or use the paint for personal, family or household purposes. Consequently, West Marine cannot be considered a buyer of consumer goods. Nor can West Marine, as a retailer, be characterized as "a person whom the manufacturer . . . or supplier might reasonably have expected to use, consume or be affected by the goods." Mass. Gen. Laws ch. 106, § 2–318. Rather, West Marine was expected to and did, in fact, sell the unopened cans of paint to ultimate consumer end users. Accordingly, West Marine's purchase of the boat hull paints was a commercial transaction, to which the exception to the privity requirement found in § 2–318 does not apply. *See Jacobs*, 420 Mass. at 327, 649 N.E.2d at 761 (defining the issue as "whether a manufacturer-remote seller of consumer goods may be held liable to a *consumer-buyer* for breach of an implied warranty of merchantability") (emphasis added); *Sebago, Inc.*, 18 F.Supp.2d at 99 ("nothing in the *Jacobs* decision supports the proposition that contract-based breach of warranty claims arising in the context of commercial transactions are subject to the relaxed privity requirement") (internal citation and quotation omitted); *Irish Venture, Inc. v. Fleetguard, Inc.*, 270 F.Supp.2d 84, 87 (D.Mass. 2003) ("privity of contract is required in implied warranty claims regarding commercial transactions"); *W.R. Constr. & Consulting, Inc. v. Jeld–Wen, Inc.*, No. Civ.A. 01–10098–DPW, 2002 WL 31194870, at * 7 (D.Mass. Sept.20, 2002) (unpublished opinion) ("Thus, it appears a contract-

based breach of warranty claim involving a commercial transaction still requires privity of contract.").

To avoid the conclusion that the plaintiffs are not the purchasers of consumer goods, the plaintiffs argue that they, in effect, stand in the shoes of West Marine's customers who could have sued Clean Seas even without privity if their claims had not been satisfied by West Marine. Of course such an analysis would eliminate the distinction between consumer and commercial transactions which was defined by the above-cited cases, and would render the holdings of those cases meaningless. This court sees no indication in the case law or otherwise that Massachusetts no longer intends to honor the distinctions between the two types of transactions recognized in *Jacobs*, and this court will not invalidate the Massachusetts court's interpretation of state law.

■■■ Moreover, the plaintiffs have not established a legal basis for their contention that they should be subrogated to the rights of West Marine's customers whose warranty claims they have paid. "Subrogation is an old term, rooted in equity," which today is used to mean "stand in the shoes of." *Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co., Inc.*, 411 F.2d 843, 844 (1st Cir.1969). "The equitable principle is that when one, pursuant to obligation—not a volunteer, fulfills the duties of another, he is entitled to assert the rights of that other against third persons." *Id. See also City of Cambridge v. Hanscom*, 186 Mass. 54, 56–57, 70 N.E. 1030, 1031 (1904) (commonwealth's payment of city's obligation entitled commonwealth to become subrogated to the right of the city against the defendants). "Rights of subrogation, although growing out of a contractual setting and ofttimes articulated by the contract, do not depend for their existence on a grant in the con-

tract, but are created by law to avoid injustice." *Canter v. Schlager*, 358 Mass. 789, 792, 267 N.E.2d 492, 494 (1971). It "covers only those situations where one party pays a debt for which another party is primarily liable." *A.N. Deringer, Inc. v. Consol. Computer Servs. Int'l, Inc.*, 381 F.Supp. 1208, 1211 (D.Mass.1974).

The plaintiffs have not presented any evidence to demonstrate that they are entitled to be subrogated to the rights of West Marine's customers against Clean Seas. West Marine asserts that it has incurred costs to settle claims against it by its customers arising as a result of the allegedly defective paints. (Compl.¶¶ 23–25). However, the plaintiffs admit that West Marine made these payments because it was strictly liable to its customers under warranty law. (Pl.'s Opp. (Docket No. 26) at 4). Thus, the record establishes that by paying these claims, West Marine was discharging its own duties as a seller of goods; West Marine was not discharging an obligation of Clean Seas. *See A.N. Deringer, Inc.*, 381 F.Supp. at 1211 (where plaintiff paid tariff as importer of record, although the goods actually were for the defendant, plaintiff was "not entitled to subrogation because it has not shown that in paying the duties it paid a debt for which the defendant was primarily liable"); *City of Cambridge*, 186 Mass. at 56–57, 70 N.E. at 1031 (no right to subrogation where commonwealth paid counsel fees on its own behalf and not on behalf of the city). Accordingly, the evidence does not support application of the equitable doctrine of subrogation here.

In sum, plaintiffs have failed to establish that they were in privity with Clean Seas, or that they should be subrogated to the rights of the end-user consumers. Therefore, Counts XIII, XIV and XV alleging

breach of express and implied warranties should be dismissed.[5]

## C. *The Economic Loss Doctrine*

Clean Seas also contends that it is entitled to summary judgment on the plaintiffs' negligence and breach of implied warranty claims (Counts XIV, XV, XVII) on the grounds that those claims are barred by the economic loss doctrine. In particular, the defendant argues that because the plaintiffs are seeking recovery only for economic losses, their claims are contract-based and they are not entitled to pursue tort-based remedies. The plaintiffs argue that the economic loss doctrine does not preclude recovery based on breach of warranty and negligence theories of liability because the paint itself was defective, and it caused damage to property belonging to West Marine's customers. However, this court concludes that because there is no evidence that the paint caused damage to property belonging to the plaintiffs, other than to the paint itself, the economic loss doctrine mandates that the warranty and negligence claims should be dismissed.

 "[T]he economic loss doctrine provides that purely economic losses are not recoverable in negligence and strict liability actions in the absence of personal injury or damage to property other than the product itself." *Sebago*, 18 F.Supp.2d at 89 and cases cited. "Economic loss" is defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property." *Id.* (quoting *Marcil v. John Deere Indus. Equip. Co.*, 9 Mass.App.Ct. 625, 630 n. 3, 403 N.E.2d 430, 434 n. 3 (1980)). The economic loss doctrine reflects certain underlying policy rationales that are applicable to cases involving the sale of an allegedly defective product, including the rationale that "where a commercial product injures itself and nothing or no one else, there is no need to create a product liability cause of action independent of contract obligation." *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 24 (1st Cir.2001) (discussing adoption of the economic loss rule in Massachusetts). *See also Sebago*, 18 F.Supp.2d at 89–90 (describing rationales underlying economic loss doctrine). Thus, the economic loss rule "draws a distinction between the situation where the injury suffered is merely the 'failure of the product to function properly,' and the situation, traditionally within the purview of tort law, where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property." *Sebago*, 18 F.Supp.2d at 89–90 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986)).

 Under Massachusetts law, the theory of breach of implied warranty is essentially the same as strict liability in tort. *See Guzman v. MRM/Elgin*, 409 Mass. at 569, 567 N.E.2d at 932; *Wolfe v. Ford Motor Co.*, 386 Mass. 95, 97–98, 434 N.E.2d 1008, 1009–10 (1982); *Mattoon v. City of Pittsfield*, 56 Mass.App.Ct. 124, 140, 775 N.E.2d 770, 783 (2002). Accordingly, unless the plaintiffs are able to show that they sustained personal injury or damage to other property, the economic loss doctrine bars their claims for negligence and breach of implied warranties.

---

**5.** As detailed above, Count XVI alleging strict liability in tort should be dismissed because it fails to state a claim. Even if it is deemed to allege a claim of breach of warranty, the lack of privity and absence of subrogation rights would require the dismissal of Count XVI as well.

The plaintiffs have not presented any evidence showing that West Marine sustained any personal injury or property damage. Nevertheless, the plaintiffs argue that their claims are not barred by the economic loss doctrine because the defective paint products caused damage to other property, namely, the boats and inflatables belonging to West Marine's customers. However, the plaintiffs cannot rely on damage to property belonging to others in order to avoid application of the economic loss doctrine. *See MacGlashing v. Dunlop Equip. Co., Inc.*, 89 F.3d 932, 937–38 (1st Cir.1996) (party seeking recovery for economic losses stemming from tort-based strict liability or negligence must make "the showing of injury or damage to itself as Massachusetts law requires."); *Superior Kitchen Designs, Inc. v. Valspar Indus. (U.S.A.), Inc.*, 263 F.Supp.2d 140, 145 (D.Mass.2003) (plaintiff must own property which was damaged to avoid economic loss rule); *Sebago*, 18 F.Supp.2d at 95 (plaintiffs must make a showing of personal injury to themselves or damage to " 'other property' that they own"). Consequently, the negligence and breach of implied warranty claims alleged in Counts XIV, XV and XVII of the Complaint are barred by the economic loss doctrine.[6] *See FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 394, 613 N.E.2d 902, 903 (1993) (affirming summary judgment in favor of defendant on negligence and warranty claims where plaintiff's damages were solely economic).[7]

### D. *Claims for Indemnification*

Finally, Clean Seas argues that if the court grants its motion for summary judgment on the plaintiffs' breach of warranty and negligence claims, it is also entitled to summary judgment on the indemnity claims asserted in Counts XVIII and XIX of the Complaint because the plaintiffs will be unable to make the requisite showing of fault on the part of Clean Seas. (Def.'s Mem. at 7). The dismissal of the plaintiffs' breach of warranty and negligence claims based on lack of privity and the economic loss doctrine does not in any way constitute a judgment regarding responsibility or fault for the allegedly defective marine paints. Moreover, Counts XVIII and XIX are independent claims, and the plaintiffs' ability to establish fault on the part of Clean Seas in order to prove these claims is not dependent upon the viability of the plaintiffs' other claims. Therefore, Clean Seas has not established that it is entitled to summary judgment on Counts XVIII and XIX of the Complaint.

In Count XVIII of the Complaint, the plaintiffs are seeking common law indemnity from Clean Seas for all costs, losses, liabilities, expenses and attorneys' fees incurred in connection with the defense and administration of West Marine's customers' claims. (Compl.¶¶ 127–33). In Count XIX, the plaintiffs are seeking a declaratory judgment regarding Clean Seas' obligation to indemnify them for those costs and losses. (*Id.* ¶¶ 134–37). "At common law a person may seek indemnification if that person 'does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another.' " *Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A.*, 395 Mass. 366, 369, 479 N.E.2d 1386, 1388 (1985) (quoting *Stewart v. Roy Bros.*, 358 Mass. 446, 459, 265 N.E.2d 357, 365 (1970)). Ac-

---

**6.** For the same reasons, if Count XVI (strict liability) is deemed to state a claim for breach of implied warranty, it should be dismissed due to the economic loss rule.

**7.** Plaintiffs seek to evade the economic loss rule by claiming that they are subrogated to the end-user consumer claims. As detailed above, however, plaintiffs have failed to establish that they are entitled to subrogation.

cordingly, under Massachusetts law, an indemnification claim requires a showing of fault on the part of the party against whom the demand for indemnification is made. *See Santos v. Chrysler Corp.*, 430 Mass. 198, 217, 715 N.E.2d 47, 62 (1999) (indemnity is available where party without fault has been compelled by law to defend himself against the wrongful act of another). According to Clean Seas, "the only allegations of fault made by Plaintiffs against Clean Seas are the charges of breach of warranty and negligence made in counts XIII–XVII of their complaint. If these counts are dismissed in Clean Seas' favor, Plaintiffs have failed to provide the requisite foundation for a showing of fault as to Clean Seas that would permit a claim of indemnification." (Def.'s Mem. at 7). This argument is not persuasive.

Clean Seas' defenses to the breach of warranty and negligence claims raise legal questions regarding privity and the economic loss rule, and are unrelated to the presence or absence of fault on the part of any of the parties. In fact, as described above, in Massachusetts, the implied warranty claims are considered strict tort liability claims requiring no proof of fault. Consequently, this court's recommendation that summary judgment be granted for Clean Seas with respect to those claims has no bearing on the question of wrongdoing by Clean Seas.

Additionally, the indemnification claims are independent claims, and there is nothing preventing the plaintiffs from pursuing them and from seeking to establish fault on the part of Clean Seas in support of those particular claims. Thus, it is well recognized that "[i]f a manufacturer supplies a defective product to a retailer, who sells it to a customer, who recovers from the retailer for an injury incurred, the retailer may recover in indemnity against the manufacturer...." *Fireside Motors*, 395 Mass. at 370, 479 N.E.2d at 1389 (quoting Restatement (Second) of Torts § 886B, comment c (1979)). The plaintiffs have alleged sufficient facts to support a claim for indemnification by asserting that "any liability of West Marine to the proponents of the customers' claims is purely constructive based upon the wrongful acts of Clean Seas." (Compl.¶ 131). Consequently, this court recommends that Clean Seas' motion for summary judgment as to Counts XVIII and XIX be denied.

## V. CONCLUSION

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Defendant Clean Seas Company's Motion to Dismiss (Docket No. 12), which was filed in the West Marine Action and seeks dismissal of the strict liability claim set forth in Count XVI of the Complaint, be ALLOWED. This court also recommends that Defendant Clean Seas Company's Motion for Summary Judgment (Docket No. 13), which was also filed in the West Marine action, be ALLOWED with respect to the breach of warranty and negligence claims set forth in Counts XIII, XIV, XV and XVII of the Complaint, and DENIED with respect to the indemnity claims set forth in Counts XVIII and XIX of the Complaint.[8]

---

8. The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72 any party who objects to these proposed findings and recommendations must file a written objec-

tion thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. *See Keating v. Sec'y of Health & Human Servs.,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 604–605 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *see also Thomas v. Arn,* 474 U.S. 140, 153–54, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985). *Accord Phinney v. Wentworth Douglas Hosp.,* 199 F.3d 1, 3–4 (1st Cir.1999); *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–51 (1st Cir.1994); *Santiago v. Canon U.S.A., Inc.,* 138 F.3d 1, 4 (1st Cir. 1998).