Nelson R. SHARP, Destiny Yachts LLC, Plaintiffs,

v.

HYLAS YACHTS, INC., Defendant and Third–Party Plaintiff,

v.

Forespar Products Corp., GMT Composites, Inc., Third–Party Defendants.

Civil Action No. 11–11814–RBC.

United States District Court, D. Massachusetts.

Aug. 26, 2013.

Stefan L. Jouret, Jouret & Samito LLP, Attorneys at Law, Christian G. Samito, Jouret & Samito LLP, Boston, MA, for Plaintiffs.

Patrick M. Groulx, Polis Legal, Somerville, MA, Jeffrey S. Baker, Baker & Associates, Boston, MA, for Defendant and Third–Party Plaintiff.

Robert E. Collins, Thomas J. Muzyka, Clinton & Muzyka, Boston, MA, Terence S. Cox, Jody McCormack, Cox Wootton Griffin Hansen & Poulos, LLP, San Francisco, CA, David J. Farrell, Jr., Law Office of David J. Farrell, Jr., S. Chatham, MA, for Third–Party Defendants.

*MEMORANDUM AND ORDER ON THIRD PARTY DEFENDANT FORESPAR PRODUCT CORP.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION (# 91)*

COLLINGS, United States Magistrate Judge.

### I. Introduction

This case arises out of a sale of a luxury Yacht, Hull No. 9, from defendant/third-party plaintiff, Hylas Yachts Inc. ("Hylas"), to the plaintiffs, Nelson R. Sharp ("Sharp") and Destiny Yachts LLC ("Destiny"). The plaintiffs have alleged a litany of claims against Hylas, including defects in the yacht which have "caused continual, long-term breakdowns . . .". (# 1 ¶ 84) All of the defects alleged involved direct damage to the yacht itself; no persons or other property are alleged to have been injured. On November 21, 2011, Hylas filed a third-party complaint against component manufacturers and suppliers GMT Composites,

Inc. and Forespar Products Corp. ("Forespar").[1]

On April 15, 2013, Forespar moved for summary judgment against Hylas. (# 91) Forespar also filed a memorandum in support of the motion for summary judgment (# 92), a statement of undisputed facts (# 93), an affidavit of Terrence S. Cox with attached exhibits (# 94), and an affidavit of Scott Foresman (# 95). On May 10, 2013, the defendant/third-party plaintiff was ordered to reply to that portion of the summary judgment motion dealing with the economic loss doctrine. (# 102)

On June 7, 2013, Hylas filed a memorandum in opposition to the summary judgment motion (# 108) that was limited to the applicability of the economic loss doctrine. On even date, Hylas also submitted a response to Forespar's statement of undisputed material facts (# 109) and an affidavit of Kyle Jachney. (# 110) On June 21, 2013, Forespar replied to the opposition filed by Hylas (# 112).

At this juncture, the record is complete and the motion for summary judgment stands ready for decision as to the applicability of the economic loss doctrine.

### II. Factual Background

This case involves a vessel, the S/V Destiny, a 70 foot U.S. flagged sailing vessel manufactured by Hylas known as a Hylas 70, Hull # 9. (# 93 ¶ 1; # 109 ¶ 1) On October 13, 2011, the plaintiffs, Sharp and Destiny Yachts, filed a lawsuit against Hylas alleging causes of action for breach of warranties, negligence, breach of contract, misrepresentation, and violation of Mass. Gen. L. c. 93A. (# 1) The myriad of complaints against Hylas included defects in the yacht which have allegedly "caused continual, long-term breakdowns and to

---

**1.** Mastervolt, Inc. was also named as a defendant in the third-party complaint, but has since been dismissed from this litigation.

date these defects have not been rectified." (# 1 ¶ 84) All of the defects alleged involved direct damage to the yacht itself; no personal injuries or other property damages are alleged. (# 93 ¶ 5; # 109 ¶ 5) On November 21, 2011, defendant Hylas filed a third-party complaint[2] against component manufacturers and suppliers, third-party defendants GMT Composites, Inc. and Forespar, alleging causes of action for indemnification, contribution, breach of warranty, breach of Mass. Gen. L. c. 106 § 2–313, breach of Mass. Gen. L. c. 106 § 2–314, breach of Mass. Gen. L. c. 106 § 2–315, breach of contract and breach of the implied covenant of good faith and fair dealing. (# 6) The only components which Forespar manufactured for the vessel (and therefore for which Forespar could potentially incur liability) are the bare mast, gooseneck mast wrap plate and vang wrap plate. (# 93 ¶ 11; # 109 ¶ 11)

The vessel was sailed extensively by Sharp between December 2010 and June 2011. (# 93 ¶ 17; # 109 ¶ 17) The first concerns regarding the mast plates and adjoining parts began in or around June, 2011. (# 93 ¶ 17; # 109 ¶ 17) In early December 2010 and in April 2011, the boat had undergone tremendous or massive loads when the boat experienced an uncontrollable jibe (unintentional abrupt turns which violently slammed the boom and its rigging) and a massive failure of the hydraulic system. (# 93 ¶ 19; # 109 ¶ 19[3]) The plaintiff, with involvement of GMT, elected to perform repairs and modifications on the mast plate and gooseneck parts in Newport, Rhode Island in June 2011. (# 93 ¶ 20; # 109 ¶ 20[4]) Via an email on June 21, 2011, Forespar was informed about the rigging inspection that had been performed by Hall Spars in Newport. (# 93 ¶ 21; # 109 ¶ 21) Forespar was not asked to travel to the vessel or perform any repair or warranty work on either of the plates. (# 93 ¶ 22; # 109 ¶ 22[5])

Following the repairs by GMT, the vessel set sail from Newport, Rhode Island destined for the Azores. (# 93 ¶ 23; # 109 ¶ 23) En route to the Azores, the yacht experienced subsequent failures in the GMT repair to the attachment between the mast wrap plates and the mast. (# 93 ¶ 24; # 109 ¶ 24[6]) Forespar's first notification that there was an issue regarding loosening of the screws in the mast wrap plate was received in an email from Sharp on June 28, 2011. (# 93 ¶ 25; # 109 ¶ 25) At that time, since the vessel was en route to the Azores, Forespar responded with its suggested fix for the described problem. (# 93 ¶ 26; # 109 ¶ 26[7])

In July, 2011 in Palma de Mallorca, Sharp independently contracted with PRO Rigging to have the gooseneck mast wrap plate removed, modified and replaced. (# 93 ¶ 27; # 109 ¶ 27[8]) Sharp also chose

---

2. There has been no direct complaint filed against Forespar by Sharp and/or Destiny.

3. Hylas admits that a jab occurred, but denies the characterization as "tremendous" or "massive."

4. Hylas denies the factual statement to the extent that Sharp's spoliation of the components prevents assessing the extent to which the components were modified.

5. Hylas denies the factual statement to the extent that to Hylas' knowledge, Forespar never requested to inspect the yacht and there is no evidence that Hylas denied or interfered with Forespar's ability to inspect the yacht or perform any warranty work.

6. Hylas denies the factual statement to the extent that Sharp's spoliation of the components prevents assessing the truth or falsity of this claim.

7. Hylas denies the factual statement to the extent that, to Hylas' knowledge, Forespar never requested to inspect the yacht and there is no evidence that Hylas denied or interfered with Forespar's ability to inspect the yacht or perform any warranty work.

8. Hylas denies the factual statement to the extent that Sharp's spoliation of the compo-

to have additional repairs made to the new plate in St. Lucia, with the vang wrap plate being removed and modified, i.e., re-shaped, in December 2011. (# 93 ¶ 28; # 109 ¶ 28 [9])

Forespar never had the opportunity to inspect or view the parts it supplied before these repairs and modifications were performed. (# 93 ¶ 29; # 109 ¶ 29 [10]) Forespar never received any additional complaints or indications of ongoing problems with its components until it was served the third-party complaint in November of 2011. (# 93 ¶ 30; # 109 ¶ 30 [11]) Forespar's first opportunity to view its allegedly defective parts was at the inspection held on September 5, 2012, long after the original gooseneck mast wrap plate and vang wrap plates had been removed, repaired, re-placed and/or significantly modified.(# 93 ¶ 31; # 109 ¶ 31) The vang wrap plate and the gooseneck wrap plate were modified, repaired, and replaced by GMT, Island Rigging (Bahamas), Pro Rigging and/or Simon Salvage (St. Lucia) at the direction of Sharp or his hired captains at various times. (# 93 ¶ 32; # 109 ¶ 32 [12]) Neither Sharp, Hylas nor GMT ever made any claim against Forespar for reimbursement for the costs of repair prior to the filing of Hylas' third-party complaint. (# 93 ¶ 33; # 109 ¶ 33 [13]).

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espa-nola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(a).[14] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentia-ry quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Ser-rano–Isern*, 605 F.3d 1, 5 (1 Cir., 2010).

Once the moving party alleges the absence of all meaningful factual dis-

---

nents prevents assessing the extent to which the components were modified.

9. Hylas denies the factual statement to the extent that Sharp's spoliation of the compo-nents prevents assessing the extent to which the components were modified.

10. Hylas denies the factual statement to the extent that, to Hylas' knowledge, Forespar never requested to inspect the yacht and there is no evidence that Hylas denied or interfered with Forespar's ability to inspect the yacht or perform any warranty work.

11. Hylas denies the factual statement in that it is vague, but assuming that the timeframe is after the repairs in Palma de Mallorca, it is admitted only to the extent that Hylas did not communicate with Forespar following the June 2011 communications.

12. Hylas denies the factual statement to the extent that, to Hylas' knowledge, Forespar never requested to inspect the yacht and there is no evidence that Hylas denied or interfered with Forespar's ability to inspect the yacht or perform any warranty work.

13. Hylas denies the factual statement to the extent that, to Hylas' knowledge, Forespar never requested to inspect the yacht and there is no evidence that Hylas denied or interfered with Forespar's ability to inspect the yacht or perform any warranty work.

14. Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[t]he stan-dard for granting summary judgment remains unchanged." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n. 4 (1 Cir., 2011).

putes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1 Cir., 2012) (internal citations and quotation marks omitted); *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1 Cir., 2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1 Cir., 2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))(further internal quotation marks omitted).

## IV. Discussion

### A. The Claims

Forespar moves for summary judgment on two grounds: (1) that under the "economic loss doctrine" the plaintiffs and Hylas are barred as a matter of law from bringing negligence, strict products liability, or implied warranty claims; or (2) on the merits that there is no genuine dispute of material facts because Hylas agrees that the components, which Forespar manufactured for this yacht, were not defective. (# 91) On May 10, 2013, Hylas was ordered to respond to that portion of the summary judgment motion dealing with the economic loss doctrine. (# 102)

Hylas has conceded that the claim for breach of the implied warranty of merchantability (Mass. Gen. L. c. 106 § 2–314) is barred by the economic loss doctrine given the absence of any non-economic damages. (# 108 at 4 n. 1) However, Hylas argues that there are five claims against Forespar that remain viable: breach of the implied warranty of fitness for a particular purpose, breach of express warranty, breach of contract, breach of the covenant of good faith and fair dealing and indemnification. (# 108) In its memorandum, Forespar admits that "[t]he Economic Loss Doctrine provides that a party who suffers purely economic harm can recover damages for that harm based *only* upon a contractual claim, i.e. express warranty, and not on a tort theory, such as negligence or strict liability." (# 92 at 8–9, emphasis in original) Accordingly, Forespar does not contend that the economic loss doctrine bars the express warranty claim, breach of contract claim, the breach of the covenant of good faith and fair dealing claim or the indemnification claim,[15] argu-

---

**15.** Forespar does argue that, to the extent Hylas is alleging a tort-based claim for indemnification, such a claim would be foreclosed by the economic loss doctrine. *See* # 112 at 7.

ing only that summary judgment is warranted on these claims because Hylas has failed to specify facts sufficient to support these causes of action. (*See* # 112) At this juncture, the only claim at issue that need be discussed is the alleged breach of the implied warranty of fitness for a particular purpose.

## B. Breach of Mass. Gen. L. c. 106 § 2–315, Fitness for a Particular Purpose

The Massachusetts Appeals Court has recently reiterated that "[i]n accord with the majority of jurisdictions which have addressed the issue, Massachusetts has long adhered to the rule that purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *Wyman v. Ayer Properties, LLC,* 83 Mass. App.Ct. 21, 25, 979 N.E.2d 782, 787 (Mass. App.Ct., 2012) (internal citations and quotation marks omitted), *rev. granted,* 465 Mass. 1105, 989 N.E.2d 898 (Mass., 2013) (Table); *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.,* 455 Mass. 458, 469, 918 N.E.2d 36, 46 (Mass., 2009) ("the economic loss doctrine bars recovery unless the plaintiffs can establish that the injuries they suffered due to the defendants' negligence involved physical harm or property damage, and not solely economic loss."); *R.L. Whipple Co., Inc. v. Pondview Excavation Corp.,* 71 Mass.App.Ct. 871, 873, 887 N.E.2d 1095, 1097 (Mass.App.Ct., 2008) ("Massachusetts generally follows the traditional rule 'that purely economic losses are unrecoverable in tort . . . actions in the absence of personal injury or property damage.' ") (quoting *FMR Corp. v. Boston Edison Co.,* 415 Mass. 393, 395, 613 N.E.2d 902, 903 (1993)).

> Economic loss is defined as damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property. The economic loss doctrine reflects certain underlying policy rationales that are applicable to cases involving the sale of an allegedly defective product, including the rationale that where a commercial product injures itself and nothing or no one else, there is no need to create a product liability cause of action independent of contract obligation. Thus, the economic loss rule draws a distinction between the situation where the injury suffered is merely the failure of the product to function properly, and the situation, traditionally within the purview of tort law, where the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property.

*Cruickshank v. Clean Seas Co.,* 346 B.R. 571, 582 (D.Mass.2006)(internal citations and quotation marks omitted).

The extant claim at issue here is an alleged breach of Mass. Gen. L. c. 106 § 2–315, the implied warranty of fitness for a particular purpose. The First Circuit has admonished that "[g]eneralizing about warranty law should be done only with care; there are variations in state law, changes over time, modification by statutes like the Uniform Commercial Code, a mingling of tort and contract concepts, and variations relating to fault, type of interest protected and damage rules." *Rule v. Fort Dodge Animal Health, Inc.,* 607 F.3d 250, 252 (1 Cir., 2010). Therefore, while it is true, as Forespar notes in its brief (# 91 at 9), that according to Massachusetts case law, "the theory of breach of implied warranty is essentially the same as strict liability in tort" (*Cruickshank,* 346 B.R. at 582 citing *Guzman v. MRM/Elgin,* 409 Mass. 563, 569, 567 N.E.2d 929, 932 (1991); *Wolfe v. Ford Motor Co.,* 386 Mass. 95, 97–98, 434 N.E.2d 1008, 1009–10 (1982); *Mattoon v. City of Pittsfield,* 56 Mass.App.Ct. 124, 140, 775 N.E.2d 770, 783 (2002)), this general proposition requires a closer look.

In the seminal case of *Back v. Wickes Corp.*, the Massachusetts Supreme Judicial Court stated that "[t]he Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965)." *Back v. Wickes Corp.*, 375 Mass. 633, 640, 378 N.E.2d 964, 969 (Mass., 1978). Read in context, however, this statement is clearly discussing Mass. Gen. L.C. 106 §§ 2–314 and 2–318. *Id.*, 375 Mass. at 639, 378 N.E.2d at 969 ("Suppliers of goods may not exclude or limit the operation of § 2–318 by contract, nor may merchants disclaim the implied warranty of merchantability."). So, too, in another leading case, the SJC held "that there is no 'strict liability in tort' apart from liability for breach of warranty under the Uniform Commercial Code, G.L. c. 106, §§ 2–314 2–318." *Swartz v. General Motors Corp.*, 375 Mass. 628, 629, 378 N.E.2d 61, 62 (Mass., 1978). This specificity was again recognized in one of the cases upon which *Cruickshank* relies:

> In *Swartz v. General Motors Corp.*, 375 Mass. 628, 378 N.E.2d 61 (1978), and in *Back v. Wickes Corp.*, 375 Mass. 633, 378 N.E.2d 964 (1978), we commented that the theory imposing strict tort liability on a seller of a product for physical harm to users or consumers (as expressed in Restatement (Second) of Torts § 402A (1965)) is very similar to the theory of implied warranty provided by the Uniform Commercial Code, G.L. c. 106, §§ *2–314, 2–318*. We noted that the Massachusetts breach of warranty theory was 'as comprehensive as the strict liability theory of (tort) recovery that has been adopted by a great many other jurisdictions' (*Back v. Wickes Corp.*, supra at 639, 378 N.E.2d 964),

and 'as comprehensive as that provided by § 402A of the Restatement' (*Swartz v. General Motors Corp.*, supra at 630, 378 N.E.2d 61). We concluded that '(t)he Legislature has made the Massachusetts law of warranty congruent in nearly all respects with the principles expressed in Restatement (Second) of Torts § 402A (1965).' *Back v. Wickes Corp.*, supra at 640, 378 N.E.2d 964.

*Wolfe v. Ford Motor Co.*, 386 Mass. 95, 97–98, 434 N.E.2d 1008, 1009–10 (1982) (emphasis added); *see also Cigna Ins. Co. v. Oy Saunatec, Ltd.*, 241 F.3d 1, 15 (1 Cir., 2001) ("Actions under Massachusetts law for breach of the implied warranty of merchantability are the functional equivalent of strict liability in other jurisdictions."); *Public Service Mut. Ins. v. Empire Comfort Systems, Inc.*, 573 F.Supp.2d 372, 380–381 (D.Mass., 2008) ("There is no strict liability in tort action recognized by Massachusetts law apart from liability for breach of warranty under the Uniform Commercial Code, Mass. Gen. Laws ch. 106, §§ 2–314 and 2–318." (quotation marks, citation and footnote omitted)).

Thus, while it is correct to say that "the theory of breach of implied warranty is essentially the same as strict liability in tort," the implied warranty is that set forth in Mass. Gen. L. c. 106 §§ 2–314 and 2–318, not the warranty of fitness for a particular purpose found at Mass. Gen. L. c. 106 § 2–315.[16]

The SJC has distinguished between contract-based and tort-based breach of warranty actions. *See Bay State–Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co.*, 404 Mass. 103, 533 N.E.2d 1350 (Mass., 1989). Here, the warranty claim is contract-based and the damages

---

**16.** Thus, I respectfully disagree with Judge Dein's conclusion in the *Cruickshank* case that for purposes of the economic loss rule, a claim based on the implied warranty of fitness for a particular purpose stands on the same footing as the implied warranty of merchantability.

sought are contract damages.[17] Because the claim for breach of the warranty of fitness for a particular purpose in this case is contract-based, it is not barred by the economic loss doctrine. *See, e.g., Regina Grape Products Co. v. Supreme Wine Co.,* 357 Mass. 631, 635, 260 N.E.2d 219, 222 (1970) (Recovery permitted for a breach of the implied warranty of fitness when only economic losses were sought as damages).

### V. Conclusion

For all the reasons stated, it is ORDERED that Third Party Defendant Forespar Product Corp.'s Notice Of Motion And Motion For Summary Judgment, Or In The Alternative For Summary Adjudication (# 91) be, and the same hereby is, ALLOWED with respect to the indemnification claim (Count I) to the extent it is tort-based and the breach of warranty of merchantability claim (Count V), and otherwise, DENIED without prejudice to filing a motion for summary judgment on all other claims after the close of discovery.

---

**17.** Damages sought in the. complaint on the breach of warranty claims against Hylas are as follows:

> As a result of Hylas's breach of warranties, the damages accrued by Plaintiffs to date now exceed $2,850,000.00, and include, without limitation, direct, incidental, and consequential damages, the cost of the Yacht, costs of repairs, loss of use, costs of additional service employees who would not otherwise been necessary, as well as attorneys' fees and costs.

These are quintessential contract damages. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 870, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) ("Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law.").